PAUL LAMB, Ex'r of the Estate of Bessie J. Lamb, *et al.*, Plaintiffs-Appellees, *v.* ORA ODELL LAMB *et al.*, Defendants-Appellants.

Fourth District   No. 4—83—0421

Opinion filed June 5, 1984.—Rehearing denied July 2, 1984.

Phillip Lamkin, of Lamkin & Lamkin, P.C., of Clinton, for appellants.

Lawrence E. Johnson and John D. McFetridge, both of Lawrence E. Johnson & Associates, of Champaign, for appellees.

JUSTICE GREEN delivered the opinion of the court:

This case concerns a suit to set aside a deed made, without consideration, by Bessie J. Lamb, conveying a 182-acre family farm to her son, defendant, Ora Odell Lamb (Odell). The deed reserved a life estate to Bessie. The trial court set aside the conveyance. The principal legal questions involved are (1) whether Bessie's executor could claim the attorney-client privilege to prevent the introduction of testi-

mony of Bessie's attorney as to his conversations with her during the transaction in question, and (2) the application of the rule of Thayer's "bursting bubble" theory of presumptions to the long-standing rule that a conveyance to the conveyor's fiduciary is presumptively invalid. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872.) We hold that the court erred in permitting the claim of the privilege and reverse the judgment and remand for reconsideration. On remand the trial court should consider the Thayer theory as set forth in *Franciscan Sisters*.

The deed was executed on August 17, 1966, when Bessie was 72 years old. On September 26, 1979, when Bessie was 85 years old, she filed a four-count complaint against Odell and his wife, Patricia Lamb (Patricia), in the circuit court of DeWitt County to set aside the deed. She died on August 5, 1980, and on November 18, 1980, her son Paul Lamb (Paul), who had been appointed her executor, was substituted, in his representative capacity, as plaintiff. On April 24, 1981, the executor filed an additional count to the then amended complaint alleging that the conveyance had been obtained in breach of the fiduciary duty owed by Odell to Bessie. By June 8, 1982, 11 of Bessie's 12 children, including Paul, had joined as plaintiffs in their capacity as devisees.

The case was tried at a bench trial lasting four days. Later, on January 17, 1983, the court entered a judgment (1) rescinding the conveyance, (2) ordering Odell and Patricia to convey the premises to the executor, and (3) directing an accounting. The judgment was based on count V which alleged a breach of a fiduciary relationship. Odell and Patricia have appealed, asserting that the judgment was contrary to the manifest weight of the evidence and that the court erred in (1) permitting exercise of the attorney-client privilege, (2) permitting evidence of transactions by Bessie several years after the conveyance, (3) permitting plaintiffs to violate their discovery obligations, and (4) refusing defendants an opportunity to present newly discovered evidence at the hearing on the petition for rehearing.

A recitation of the testimony is necessary to explain our ruling. Many of the basic facts are undisputed. Prior to the death of Bessie's husband, Jerry M. Lamb, the father of all the Lamb children, in September 1965, the farmland was owned by Jerry and Bessie as joint tenants with right of survivorship. It then became Bessie's property outright. Prior to Jerry's death, Odell had been farming the land on a part-time basis, living with Patricia in a house he had built on the land. The parents lived in the farm house and had conveyed to Odell a mortgage against the premises in the amount he had expended to

build the house in which Odell and Patricia lived.

Upon the father's death, the family met and decided that the oldest child, Carl, should assume the leadership in managing the family affairs. Carl went to the farm to take an inventory. Upon Carl's arrival, Odell told Carl to "get the hell out of [there]" because Odell had farmed the property prior to the father's death and maintained he should "still operate it." When Bessie was told of this, she responded that maybe the problem could be resolved. However, the record does not indicate that Bessie did anything to limit the control that Odell had assumed. By the time of the conveyance, Bessie was 72 years old. She had only a sixth grade education.

The evidence indicated that, prior to her husband's death, Bessie had not handled business concerning the farm. Although various plaintiffs testified that after her husband's death Bessie relied on Odell to help her transact farm business, those plaintiffs were unable to give specific instances of such reliance. However, an employee at the bank where Bessie did business testified that by early 1966 Odell was permitted to write checks on Bessie's account.

In early August 1966, Bessie had several conferences with her lawyer in his office. On August 17, 1966, Odell drove Bessie to that office but did not stay with her there. During a lengthy conference with that lawyer, Bessie executed a will and the deed in question. The only other person present during the conference was the lawyer's wife, who had the power of a notary public.

Between 1971 and 1974 a portion of the farm was sold to the Illinois Power Company for $39,000. Bessie, Odell and Patricia were apparently required to join in the deed. Bessie was permitted by Odell and Patricia to keep 50% of the net proceeds of the sale, although based on an actuarial valuation of her life estate interest she would have been entitled only to approximately 33% of the proceeds. The deed in question was recorded at the time of the sale to Illinois Power Company, but apparently no one in the Lamb family, other than the parties to that transaction, knew of the deed until 1979. Thereafter Bessie made the will, later admitted to probate, which left her property to her children in equal shares.

■ In *Kolze v. Fordtran* (1952), 412 Ill. 461, 107 N.E.2d 686, the court determined that a fiduciary relationship exists when there is a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence. The factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health and mental condition, and the extent

to which the allegedly servient party entrusted the handling of his business and financial affairs to and reposed faith and confidence in the dominant party. (*Desiderato v. Sullivan* (1980), 84 Ill. App. 3d 1117, 406 N.E.2d 116.) In *Kolze*, the court stated:

> "Where the relationship does not exist as a matter of law or is sought to be established by parol evidence, the proof must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion. [Citations.] The burden of proving facts from which a fiduciary relationship would arise is on the one who attempts to set aside a conveyance." *Kolze v. Fordtran* (1952), 412 Ill. 461, 468, 107 N.E.2d 686, 690.

Bessie apparently did nothing when Odell refused to cooperate with Carl shortly after Jerry Lamb's death, thus indicating she was relying on Odell to make decisions concerning her principal asset, the farm. Odell had taken firm control of that property. The fact that Bessie spent much time visiting other members of her family in the first few years after her husband's death did not negate the trust and confidence she was placing in Odell. The evidence supported a determination by the trial court that a fiduciary relationship had been proved by clear and convincing evidence.

Citing *Desiderato v. Sullivan* (1980), 84 Ill. App. 3d 1117, 406 N.E.2d 116, defendants contend that in order to properly raise the presumption of invalidity of a conveyance one must not only prove the existence of a fiduciary relationship, but must also show that the relationship existed with reference to the transaction in dispute. Even if that were so, the relationship here between Bessie and Odell principally involved the farm which was the subject matter of the conveyance and Odell had aided Bessie in conferring with the lawyer who advised Bessie with reference to the transaction and who drafted the deed. In any event, we deem that evidence that the fiduciary did not participate in the transaction under scrutiny is more properly considered in rebutting the presumption of undue influence rather than in considering the question of the existence of the presumption. The lack of participation by the fiduciary would tend to show that the subservient party acted voluntarily and free from undue influence.

The following language of the supreme court is applicable to this case:

> "The fact that a deed was made between parties standing in a fiduciary relation does not necessarily require that the transaction be set aside. [Citations.] Where a confidential relation exists and the dominant party is the grantee of a deed executed during the existence of the relationship, the conveyance be-

tween the parties is presumptively fraudulent, and the burden rests upon the grantee to show the fairness of the transaction and that it was equitable and just and did not proceed from undue influence. *** There is no rule of law, however, prohibiting a grantor from making a gift to one standing in a fiduciary relation to him, provided the gift is voluntary and not the result of undue influence." *Stone v. Stone* (1950), 407 Ill. 66, 79, 94 N.E.2d 855, 862.

The evidence which was excluded because the trial court permitted the executor to exercise the attorney-client privilege bore on the question of whether the presumption of invalidity was rebutted. We now turn to the propriety of that ruling. The defense called the attorney, who represented Bessie during the transaction in which the deed was executed. Because of the executor's claim of the privilege, the court refused to allow the attorney to relate his conversation with Bessie at the meeting concerning the transaction, but permitted him to describe what happened. The attorney then related that: (1) He and Bessie had a meeting lasting 1 hour and 45 minutes on August 10, 1966, at which time Bessie appeared to be competent and to understand what he had explained to her; (2) on August 11, 1966, she contacted him about a matter they had discussed; (3) during an August 17, 1966, conference with Bessie which lasted from 1:45 to 3 p.m. she executed the deed in question and a will both of which he had prepared at her request; and (4) that will recognized the existence of the deed, devised the farm to Odell, and divided the remainder of her estate equally between her 12 children.

Defense counsel then elicited the following testimony from the attorney pursuant to an offer of proof. Shortly after the death of Jerry Lamb, Bessie came to the attorney's office and told him that she wanted to "deed the farm" to Odell. He told her that she should carefully consider such a transfer because of the effect it would have on her other 11 children. During an August 10, 1966, conference, Bessie told him that she wanted to deed the farm to Odell and that because she was going to visit her sister in Kentucky she wanted the matter "taken care of right away." Again, he advised her to consider the effect of such a transfer. He also explained to her the various ways in which she could transfer the real estate to Odell. On August 11, 1966, she called him and asked him if Patricia's name should be included in the deed. She contacted him again on August 13, 1966, and asked him if the mortgage was not paid in full during her lifetime whether Odell would have to pay off the mortgage. During the August 17, 1966, meeting the attorney explained the provisions of the deed in detail

and she responded that she wanted to "give the farm to Odell." At the conclusion of the meeting in which Bessie executed the documents, Bessie gave the deed to Odell, but stated that she did not want it recorded because "she did not want the rest of the family to find out about it."

Obviously, the foregoing testimony, if admitted, would have had a significant bearing upon whether Bessie's gift to Odell and Patricia was "voluntary and not the result of undue influence." Plaintiffs contend that certain statements contained in the trial court's memorandum explaining the decision indicate that the court considered this offered, but excluded, evidence. However, in a memorandum filed by the court upon denying defendants' motion to reconsider the court stated that evidence excluded was not considered. Thus, it is important for us to determine whether this evidence should have been admitted.

■ During her lifetime Bessie could have asserted a privilege against revelation of the foregoing conversation she had with her attorney. (*People v. Adam* (1972), 51 Ill. 2d 46, 280 N.E.2d 205.) We deem the following to express the rule concerning the privilege after the death of the client:

> "While upon the death of the client, the [attorney-client] privilege survives in favor of his estate in regard to claims by outsiders against the estate [citation], it does not apply to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by *inter vivos transaction.* *** While it had been suggested that the attorney may not disclose facts which would tend to invalidate the will [citation], and that he may not disclose confidential communications [citation], the actual holding of the cases which pass upon the point has been that neither side may assert the privilege." (Emphasis added.) Cleary & Graham, Handbook of Illinois Evidence sec. 505.7, at 212-13 (3d ed. 1979). See also McCormick, Evidence sec. 94, at 197-99 (2d ed. 1972).

In *Wilkinson v. Service* (1911), 249 Ill. 146, 94 N.E. 50, the court determined that while conversations between an attorney and client might be privileged when offered in support of a claim against the client's estate, the conversations would be admissible in a contest between the heirs and next of kin of the testator. In *Champion v. McCarthy* (1907), 228 Ill. 87, 81 N.E. 808, the court stated:

> "Where the transaction between the attorney and client is the preparation of a deed or a contract in accordance with the di-

rections of a client, and no legal advice is asked or required, the reasons or motives moving the client to make the deed or contract, if stated to the attorney, are not privileged. [Citations.] *** [Wigmore] announces the rule to be, that the fact of the execution of a will, and its contents, are within the rule during the life of the testator, but the rule ceases at his death, and the attorney may then disclose all that affects the execution and tenor of the will." 228 Ill. 87, 98-99, 81 N.E. 808, 812.

■ The parties here (1) were all devisees of Bessie, the decedent who had the privilege, and (2) claimed through her either by *inter vivos* transaction (Odell) or by testate or intestate succession (all of the plaintiffs). We conclude that the attorney-client privilege was not applicable to the situation in this case and, therefore, the attorney's testimony as to his conversations with Bessie should have been admitted.

In addition to the error in allowing the privilege, there is another factor which, through no fault of the court or counsel, enters into our decision to reverse. After the court had entered the judgment appealed here, the supreme court decided *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872. There, the court decided that Thayer's "bursting bubble" rule in regard to presumptions in civil cases was applicable to all such presumptions including that which arises from a transaction with a fiduciary.

Thus, when sufficient evidence is presented to rebut the presumption, it vanishes and the party seeking to set aside the transaction has the burden of persuading the trier of fact that the transaction sought to be set aside was brought about by fraud or undue influence. The *Franciscan Sisters* court stated that to rebut the presumption arising from a fiduciary relationship with a lawyer the evidence produced by the fiduciary in rebuttal must be clear and convincing. The opinion implied that the same standard was applicable where, as here, the alleged fiduciary was not a lawyer. The opinion indicated that in determining the sufficiency of the rebuttal evidence, the focus is on the evidence produced by the fiduciary rather than on the evidence as a whole. The court also indicated that even if the presumption is rebutted, the trier of fact may, nevertheless, consider the fiduciary relationship as a circumstance out of which an inference of undue influence or fraud may arise.

■ The trial court, obviously, did not apply the *Franciscan Sisters* analysis in this case. Considering that substantial evidence, bearing on the propriety of the transaction, was rejected because of the misapplication of the attorney-client privilege and that a new and slightly different method of analyzing the evidence is now prescribed,

we deem that the trial court should reconsider its decision.

■▊■ We dispose of the other claims of error summarily. Considerable evidence was introduced by plaintiffs showing transactions involving Bessie several years after the conveyance when she was older, less competent, and more under Odell's influence. This testimony had little probative value as to the propriety of the conveyance and would have been prejudicial at a jury trial. Here, it may have been material to some extent on the accounting issue, and we find no prejudice to have resulted. As in *Franciscan Sisters* our mandate will authorize the trial court to hear additional testimony. The evidence claimed by defendants to be newly discovered can be presented then. Similarly, plaintiffs' allegedly tardy compliance with discovery orders which may have prevented defendants from fully presenting their case can be remedied by the presentation of further evidence.

Accordingly, we reverse the order from which appeal is taken and remand the case to the circuit court of DeWitt County for further consideration. The trial judge should consider the evidence contained in the offer of proof concerning Bessie's conversations with her attorney. The judge should also receive and consider any new evidence offered by the parties that has substantial merit.

Reversed and remanded with directions.

TRAPP and WEBBER, JJ., concur.