RAOUL REQUENA, Special Adm'r of the Estate of Rosa Garcia, Deceased, Plaintiff-Appellant, v. FRANCISCAN SISTERS HEALTH CARE CORPORATION *et al.*, Defendants-Appellees.

Third District   No. 3—89—0786

Opinion filed April 17, 1991.

Patrick J. Kenneally, Ltd., of Chicago, and Roman R. Okrei, of Stefanich, McGarry, Wols & Okrei, of Joliet (Sheila T. Kirchheimer, of counsel), for appellant.

Stephen R. Swofford and Peter G. Panno, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Bruce L. Carmen, of counsel), for appellee Franciscan Sisters Health Care Corporation.

Pamela Davis, Robert J. Baron, and George J. Vosicky, all of Rooks, Pitts & Poust, of Joliet, for appellees Roy Alcala and R. Singh.

JUSTICE McCUSKEY delivered the opinion of the court:

The plaintiff, Raoul Requena, special administrator of the estate of Rosa Garcia, filed a medical negligence action against Drs. Roy Alcala, R. Singh (hereinafter referred to as Alcala and Singh), and St. Joseph Medical Center (hereinafter referred to as St. Joseph's) on behalf of Rosa Garcia, deceased. The plaintiff appeals the verdict and judgment entered in favor of the defendants, Alcala and Singh.

On January 26, 1986, Rosa Garcia, who had been suffering from congestive heart failure, complained of severe chest pain. Family

members transported her to St. Joseph's, where a doctor examined and admitted her. At the time of this admission, she suffered from plural effusion, left bundle branch block, and possible pneumonia. In addition, the doctor determined she experienced a myocardial infarction as well as premature ventricular contractions (PVC's).

Following her admission, no additional tests or treatment was conducted or undertaken, other than those administered in the emergency room. Alcala, the emergency room physician, determined the PVC's were chronic and did not further treat this condition. Despite her family's concerns and objections, Rosa Garcia was released four days later still complaining of chest pain.

On February 2, 1986, she returned to St. Joseph's complaining of chest pain plus nausea. She was examined by Singh, who failed to administer any diagnostic tests with regard to her symptoms. Singh prescribed an antacid and released her. A doctor testifying for the plaintiff opined that Singh should have conducted diagnostic tests, e.g., orthostatic hypotension, reviewed her medical chart and file, and admitted her.

On February 3, 1986, Rosa Garcia reappeared at St. Joseph's in worse condition, i.e., low blood pressure and vomiting. Singh ordered a psychiatric exam and admitted her. Dr. Van Arsdell (hereinafter Van Arsdell) assumed the responsibility of her care. Two days later, Rosa Garcia experienced total heart failure and died.

A doctor testifying for the plaintiff stated that Alcala's and Singh's failure to properly examine and treat Rosa's condition was the proximate cause of her death. A doctor testifying for the defendants stated the proximate cause of death was the substandard care provided by Van Arsdell. The same witness indicated that Van Arsdell exercised poor judgment by ordering the administration of excessive intravenous fluid to a patient with such a weak heart.

Van Arsdell, on the date of his deposition, arrived at defendants' attorneys' law office one hour early. For approximately one hour, Van Arsdell discussed the facts of this case with defendants' counsel. Defense counsel advised Van Arsdell in advance of his deposition of possible areas of inquiry by plaintiff's counsel. Later, Van Arsdell acknowledged he discussed the facts of this case with defense counsel. However, it was never specifically known what was discussed or revealed between Van Arsdell and defense counsel. Van Arsdell indicated he did not know which party defense counsel represented.

The case proceeded to trial, and during jury deliberations, the jury requested clarification of certain testimony and instructions. The trial judge advised the jury, without the presence or involvement of either counsel, to base their decision on their recollection of the evi-

dence. The trial judge did not otherwise answer the jury's inquiry or clarify the instructions. Neither attorney was advised of this dialogue until after the announcement of the verdict.

During a post-trial motion hearing, the trial judge justified his handling of the jury's inquiry by indicating that neither counsel was available at the pivotal time. Therefore, the trial judge concluded he could not have brought the matter to their attention. Both counsel claimed to be readily accessible during the jury deliberations. The jury returned verdicts for the defendants, and the trial court entered judgment. This appeal follows.

Plaintiff raises numerous issues on appeal. The first issue is whether the trial court committed reversible error by permitting plaintiff's treating physician, Van Arsdell, to testify following his *ex parte* communication with defendants' attorney. We believe reversible error did occur. We remand this case for a new trial with the instruction that Van Arsdell is prohibited from testifying on retrial.

■ It is well-settled law that a defense attorney is prohibited from engaging in *ex parte* communications with plaintiff's treating physician. (*Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 499 N.E.2d 952.) The *Petrillo* case has been adopted and followed by the third district in *Yates v. El-Deiry* (1987), 160 Ill. App. 3d 198, 513 N.E.2d 519. *Petrillo* holds that where there are *ex parte* communications between defense counsel and plaintiff's treating physician, it is reversible error to allow plaintiff's treating physician to testify at trial. (See *Elliott v. Koch* (1990), 200 Ill. App. 3d 1, 558 N.E.2d 493.) The theory behind this harsh yet necessary prohibition is based upon the doctor/patient privilege. In *Yates*, this same type of *ex parte* communication resulted in reversible error when the defendant was allowed to call plaintiff's treating physician to testify. "Prejudice and improper conduct can be implied from the fact that the plaintiff's treating physician has violated his ethical and fiduciary obligations owed to his patient by engaging in *ex parte* conferences concerning the patient with the patient's legal adversary and without plaintiff's consent." *Yates v. El-Deiry*, 160 Ill. App. 3d at 203.

In the case of *Mahan v. Louisville & Nashville R.R. Co.* (1990), 203 Ill. App. 3d 748, 561 N.E.2d 127, the Fifth District Appellate Court recently permitted plaintiff's treating physician to testify after he had a brief *ex parte* conversation with defendant's attorney just prior to the doctor's deposition. In *Mahan*, the court found the conversation lasted no more than 30 seconds. Further, the court in *Mahan* found the communication did not result in the disclosure of any

private or confidential information regarding the patient and, therefore, was distinguishable from *Yates*.

■ The present case is distinguishable from *Mahan* since the conversation between defense counsel and Van Arsdell was more than brief. Further, and more importantly, defense counsel here attempted to advise the treating physician of possible questions that would be asked by plaintiff's counsel during the deposition. In the instant case, defense counsel initiated the conference with Van Arsdell. During the conference, defense counsel provided the treating physician with medical records from which he could base his testimony. He also described to Van Arsdell the allegations within plaintiff's complaint and explained the defense theory. Defense counsel admittedly discussed the treatment of plaintiff with Van Arsdell. The strong public policy of *Petrillo* is based on preserving the confidential and fiduciary relationship between a physician and patient. The communication in the instant case jeopardized that policy and was improper. Prejudice to the plaintiff can be implied from the facts and circumstances of the improper *ex parte* communication in this case. Here, the plaintiff's treating physician has violated his ethical and fiduciary obligation owed to plaintiff. The *ex parte* communication between Van Arsdell and defense counsel was without the patient's consent and concerned the patient's treatment.

The appropriate relief to be granted for this violation is to prohibit Van Arsdell from testifying at retrial because his testimony has been tainted by virtue of the improper *ex parte* communication.

■ The widely accepted *Petrillo* case emphasizes the safeguards of the formal discovery process and suggests the same be implemented and used throughout a case in order to preserve the privileges and rights that the parties should possess and enjoy. The *ex parte* communication between defense counsel and Van Arsdell undermined the confidence that Rosa Garcia placed with Van Arsdell when she received his medical assistance. The physician/patient privilege can only be waived by the patient. It cannot be waived by the doctor.

■ Plaintiff next contends the trial court erred by permitting one of plaintiff's former treating physicians to testify on the grounds of relevancy and remoteness. This doctor diagnosed and treated the plaintiff for congestive heart failure approximately 2½ years prior to her death. We believe the testimony of this doctor is relevant to establish the plaintiff's preexisting cardiac condition and the symptoms she experienced. He should be permitted to testify only as to those matters within his personal knowledge. The fact this doctor's recall was minimal could be exploited during cross-examination. Evidence of an

injured person's health and condition before an injury is admissible to show the extent, nature, and effects of the injury. However, the evidence must be sufficiently connected with the injury to be material. (*Shaheed v. Chicago Transit Authority* (1985), 137 Ill. App. 3d 352, 484 N.E.2d 542.) This is a matter involving a preexisting condition that could significantly reduce the life span of the plaintiff and thereby reduce damages accordingly. The fact that plaintiff suffered from a known or easily diagnosable illness that began nearly 2½ years prior is not too remote in time and is relevant to the medical negligence questions concerning the defendants' diagnosis and treatment of plaintiff at the time immediately preceding her death.

■ Plaintiff next argues the trial court erred by dismissing with prejudice the allegations against St. Joseph's based on a deficient medical report attached to plaintiff's first amended complaint. The medical report is required by section 2—622 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—622). The plaintiff filed with the first amended complaint the requisite medical report issued by an expert. The expert stated within the medical report that he believed there was reasonable cause to file a medical malpractice action against the defendants, including St. Joseph's. We find that the medical report sufficiently complies with the language, spirit, and intention of section 2—622 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—622.) After reviewing the pertinent medical records, the expert identified St. Joseph's as a potential defendant in this matter. However, we find that each defendant was enumerated with specificity. Therefore, the medical report was sufficient and the trial court erred by dismissing St. Joseph's from the case. The technical requirements of this statute should not interfere with the spirit or purpose of the statute. The appellees in this case have shown no prejudice since all defendants were named in the expert's medical report. Therefore, the absence of strict technical compliance with the statute is one of form only and not of substance. The technical requirements of the statute should not be utilized to deprive the plaintiff of his substantive rights. (*McCastle v. Sheinkop* (1987), 121 Ill. 2d 188, 520 N.E.2d 293.) The purpose of the enactment was not to insurmountably burden the plaintiff with hurdles prior to filing, but to reduce the number of frivolous lawsuits filed concerning complex and difficult areas of medical malpractice.

The plaintiff next argues the medical certificate requirement within section 2—622 of the Code of Civil Procedure is unconstitutional. Based on our decision with regard to the sufficiency of the

medical report attached to plaintiff's first amended complaint, it is not necessary that we reach a finding of this issue.

■■ The plaintiff raises several issues concerning the trial court's dialogue with the jury following the evidentiary portion of the trial. In consideration of the result reached on the aforementioned issues, it is not necessary to address these arguments in depth. However, a brief discussion should occur. The plaintiff contends the trial court committed reversible error by failing to correctly advise and clarify the instructions when it received written inquiry from the jury. We disagree. It is within the trial court's discretion to allow or refuse a request for clarification from the jury. (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 505 N.E.2d 320.) In this situation, the trial court admitted Illinois Pattern Jury Instructions and allowed them to remain without clarification. The trial court acted within its discretion and did not commit error. Furthermore, there was no suggestion the instructions were incomplete or the jury was confused.

■■ The plaintiff next argues the trial court committed reversible error by denying the jury's request for a transcript of the testimony of the defendant, Singh. We disagree. It is within the discretion of the trial court to refuse the jury's request for a review of the transcript. (*People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577.) The plaintiff further argues that error occurred because the trial court failed to discuss the jury's request with counsel. We disagree. The trial judge acted within his discretion.

For the reasons mentioned, the circuit court of Will County is reversed, and this matter is remanded for a new trial consistent with the holdings herein.

Reversed and remanded.

STOUDER, P.J., and SLATER, J., concur.