# Illinois Official Reports

## Appellate Court

---

### *Morrow v. Pappas*, 2017 IL App (3d) 160393

---

| | |
|---|---|
| Appellate Court Caption | STEVE MORROW, ERIC CHAMBLISS, REBECCA McGOWEN, GERARD BEACH, and MIDWEST GREYHOUND ADOPTION, INC., Plaintiffs, v. RINA PAPPAS, SHANE BURROWS, KEVIN DENNIS STEWARD, THE FIRST NATIONAL BANK OF OTTAWA, and JOHN CANTLIN, Defendants (Steve Morrow, Eric Chambliss, Rebecca McGowen, and Gerald Beach, Plaintiffs-Appellants; Rina Pappas, Shane Burrows, Kevin Dennis Steward, and The First National Bank of Ottawa, Defendants-Appellees). |
| District & No. | Third District<br>Docket No. 3-16-0393 |
| Filed | October 30, 3017 |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 13-L-118; the Hon. Troy Holland, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Channing B. Hesse and Amy G. Grogan, of Garelli Grogan Hesse & Hauert, of Elmhurst for appellants.<br><br>William W.P. Atkins and Robert J. Hills, of Johnson, Bunce & Noble, P.C., of Peoria, for appellee Shane Burrows. |

Scott J. Schweickert, of Schweickert & Ganassin LLP, of Peru, for appellee Rina Pappas.

Michael L. Resis and Ellen L. Green of SmithAmundsen LLC, of Chicago, for other appellees.

Panel            JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Presiding Justice Holdridge dissented, with opinion.


## OPINION

¶ 1       After the trial court's granting of defendants' motions for summary judgment, plaintiffs appeal, arguing several points of error by the trial court, namely (1) granting defendants' motions for summary judgment; (2) the trial court's discovery rulings involving a denial of plaintiffs' motion to compel, subpoenaed cell phone records, the entry of a protective order, and the trial court's failure to apply the Dead Man's Act; (3) the trial court's dismissal of plaintiffs' claims for conspiracy and fraud; and (4) the trial court's refusal to issue sanctions to defendants. We affirm the trial court's ruling on all issues raised.

¶ 2                                    FACTS

¶ 3       Decedent Dorelle Denman executed a will on March 27, 2012 (March Will). She named plaintiffs Steve Morrow, Eric Chambliss, Rebecca McGowen, Gerard Beach, and Midwest Greyhound Adoption, Inc. (Midwest), as beneficiaries. Defendant Shane Burrows was also named as a beneficiary. John Cantlin, the attorney who drafted the will, was identified as executor of the March Will. Cantlin also acted as Denman's power of attorney over property. Denman executed a subsequent will on September 13, 2012 (September Will). That will removed the prior beneficiaries Morrow, Chambliss, McGowen, Beach, and Midwest, and instead named Rina Pappas and Burrows as beneficiaries, and appointed the First National Bank of Ottawa (FNB) as executor under the September Will. Kevin Steward, a trust officer of FNB, managed all of Denman's business affairs. Burrows is the only defendant who was named under both the March Will and the September Will.

¶ 4       Denman owned and operated several businesses: Willows Hotel and two bed and breakfast establishments, Landers House and Bear Creek Lodge. Pappas was an employee of Denman's and managed the Bistro, a restaurant located in Willows Hotel. On May 12, 2012, Denman fell and broke her hip and was admitted to St. Margaret's Hospital. Her health worsened, and she was transferred to Manor Court on May 18, 2012. She remained at Manor Court for a month, until she was stable enough to return home. She then returned to the hospital on June 27, 2012, after being found nearly unresponsive at her home. Denman was transferred between hospitals

and rehabilitation facilities for a period of time until August 2012. On August 15, 2012, Denman met with Cantlin and Steward to talk about her business affairs generally.

¶ 5      On August 29, 2012, while at Illinois Valley Community Hospital, Denman instructed a nurse to contact Steward. Denman spoke with Steward over the phone and advised him of several changes she wanted to make to her will. Later that same day, Steward, Cantlin, and another attorney, Joseph Cantlin, met with Denman to discuss the changes that she wanted to make to her will. They discussed her properties, her debts, and the extent that her property should be divided among Pappas and Burrows. Denman did not indicate to the Cantlins or to Steward that she was being pressured to change her will, and she did not indicate that she was influenced by anyone to make changes to her will. Cantlin testified that during this meeting she appeared lucid, competent, and rational and knew exactly what she wanted to do regarding her estate plan. After discussing these changes, Cantlin advised Denman that they would redraft the will and bring it back for execution on the next day. However, her health condition worsened, and the new draft was not immediately executed.

¶ 6      On September 13, 2012, Denman contacted Steward and told him that she wanted to get her affairs in order and sign her new will. The Cantlins were not available to preside over the execution of the revised will. Instead, Steward retrieved the revised will from Cantlin's office and took it to Denman. The same day, Dr. Shawn Bailey met with Denman to discuss executing a do not resuscitate order (DNR). In his deposition, Bailey testified he met with Denman for a period between 5 to 10 minutes, and Bailey further testified that she was alert, competent, aware of her physical health, and was able to understand and articulate her wishes about her end of life care. On September 13, 2012, a DNR was executed, signed by Denman and Bailey. In his deposition testimony, Bailey explained that Denman had emphysema and chronic obstructive pulmonary disease (COPD), which could lead to instances of hypoxia and encephalopathy (confusion from lack of oxygen). Descriptions of "delirium" or "altered mental state" in Denman's medical records would be similar to a notation of encephalopathy. Once Denman received oxygen, her condition would improve. She did not exhibit delirium, dementia, or altered mental status when he saw her. In his professional opinion, Denman was competent and capable of making decisions on September 13, 2012.

¶ 7      Shortly after the DNR was executed, Steward arrived and went to Denman's room where he went over the substantive provisions of the will and the changes that were implemented. Denman expressed to Steward that the changes reflected what she desired. Cantlin had instructed Steward on how to review and execute the new will with Denman. Two witnesses, Mark Seidel and Vicki Gomez, were then brought into the room to witness the execution of the will. Steward then asked Denman a series of questions in front of the witnesses to assess her understanding and determined that Denman had testamentary capacity to sign the will. Witness Seidel, when presented with this lawsuit, attested that his authentic signature appears on Denman's September Will. Seidel attested that he has no recollection of witnessing the will. He testified, however, that he was at the Manor Court facility visiting family and friends and that he takes medication that sometimes causes memory problems. The other witness, Gomez, testified that Denman had no difficulty in understanding the execution of the will, that she gave appropriate answers, and understood what was happening. On September 13, 2012, the will was signed by Denman and witnessed. On September 25, 2012, Denman passed away, and the September Will was filed in the probate court on September 26, 2012.

¶ 8    Plaintiffs filed their original complaint on September 24, 2013. They alleged intentional interference with testamentary expectancy, conspiracy, fraud, malpractice, and breach of fiduciary duty. They filed an amended complaint on October 27, 2013, and a second amended complaint on January 29, 2014. The second amended complaint involved eight counts: counts I-IV involved claims of intentional interference with testamentary expectancy (count I v. Pappas, count II v. Burrows, count III v. Cantlin, count IV v. Steward and FNB). Count V included a claim of conspiracy to commit intentional interference with testamentary expectancy, and count VI included a claim for fraud against all the defendants. In count VII, a claim for legal malpractice was alleged against Cantlin, and count VIII alleged a breach of fiduciary duty against Steward and FNB. All defendants filed motions to dismiss the complaint. On April 28, 2014, the trial court granted motions to dismiss the conspiracy (V), fraud (VI), and breach of fiduciary duty (VIII) counts. It denied the motions to dismiss the other counts (I-IV, VII). The plaintiffs were granted 28 days to replead.

¶ 9    In the third amended complaint, the plaintiffs maintained their counts of intentional interference with testamentary expectancy against Pappas (count I), Burrows (count II), Cantlin (count III), and Steward and FNB (count IV) but added a request for punitive damages in each of those counts. Counts V, VI, and VIII, which had been previously dismissed by the trial court, remained in the complaint but were in strike-through format with no new allegations concerning those claims. The only changes made to the new complaint sought punitive damages and omitted prior claims for attorney fees. In June 2014, all defendants filed motions for dismissal pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2014)). On July 31, 2014, the trial court entered an order denying all motions for dismissal as to counts I-IV.

¶ 10   As discovery ensued, answers were filed and depositions took place. Discovery was served on defendants, and plaintiffs filed a motion to compel directed against Steward and FNB, arguing that they improperly claimed attorney-client privilege in refusing to comply with their discovery requests for information regarding Denman's estate. On June 18, 2015, the trial court denied plaintiffs' motion to compel and motion for sanctions against FNB and Steward. FNB and Steward's motion to quash a subpoena for Steward's personal cell phone records was "denied but" was "modified" as follows: the records were to be reviewed *in camera* and the parties were to "enter into a protective order to ensure the privacy of individuals is maintained."

¶ 11   On July 10, 2015, the trial court granted Steward's motion for a protective order without modification. Thereafter, the defendants each moved for summary judgment. Attached to Steward and FNB's motion were the deposition testimonies of Steward, Cantlin, Bailey, Gomez, and Seidel. Cantlin's motion for summary judgment as to counts III (intentional interference) and VII (legal malpractice) was granted on March 21, 2016. On June 10, 2016, the trial court granted the remaining defendants' motions for summary judgment. The plaintiffs moved to reconsider. The trial court denied the motion, and the plaintiffs appealed. Midwest was not involved in the trial court and is not a part of the appeal. Cantlin is also not a party to the appeal.

ANALYSIS

## A. Tortious Interference With Testamentary Capacity

Plaintiffs request that this court reverse the trial court's decision to grant defendants' motions for summary judgment. Plaintiffs contend that summary judgment was improper because there were issues of material fact as to their claims for tortious interference of their testamentary expectancy. Pappas argues that the plaintiffs do not have any knowledge of tortious conduct by her. Burrows argues that the plaintiffs cannot prove their expectation existed under the March Will because none of the plaintiffs were aware that they stood to inherit under the March Will. Steward and FNB contend that plaintiffs are unable to establish an expectancy under the valid September Will that revoked the March Will and that, because plaintiffs failed to establish an element of their claim, summary judgment was proper.

Summary judgment should be granted when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). Summary judgment is only proper when the resolution of a case depends on a question of law and should be awarded to the moving party when free of doubt. *In re Estate of Hoover*, 155 Ill. 2d 402, 410 (1993). While considering granting the motion, all evidence is construed strictly against the moving party and in favor of the nonmovant. *Id.* at 410-11. The standard of review on appeal for the grant or denial of a motion for summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

The " 'widely recognized tort' " of tortious interference with testamentary expectancy does not contest the validity of the will; it is a personal claim against an individual tortfeasor. *In re Estate of Ellis*, 236 Ill. 2d 45, 52 (2009). A plaintiff must establish the following elements: (1) the existence of an expectancy; (2) defendant's intentional interference with the expectancy; (3) conduct that is tortious in itself, such as fraud, duress, or undue influence; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages. *Id.* To constitute undue influence, it must be that such "[f]alse or misleading representations concerning the character of another may be so connected with the execution of the will that the allegation that such misrepresentations were made to the testator may present triable fact questions on the issue of undue influence." *Hoover*, 155 Ill. 2d at 412. A person is subject to liability for another's loss, where, by tortious means such as fraud or duress, the person intentionally prevents another from receiving an inheritance or gift from a third person that the person would have otherwise received. *Ellis*, 236 Ill. 2d at 52.

### Existence of an Expectancy

With respect to the first element, the existence of an expectancy, the plaintiffs contend that this was satisfied by the existence of the March Will because the "allegation that a prior will existed is a sufficient allegation of an expectancy." *In re Estate of DiMatteo*, 2013 IL App (1st) 122948, ¶ 80. In *DiMatteo*, the appeal was brought after a section 2-615 dismissal. The court determined that because the plaintiff pled the allegation that a prior will existed and that the respondent and named beneficiary of the second challenged will knew how to "change the will of a person" and that he "succeeded in convincing DiMatteo to change his will," the cause of action was successfully pled. (Emphases omitted.) *Id.* In an additional decision from the Illinois Supreme Court in *DeHart v. DeHart*, the court there also acknowledged that an

existence of expectancy is sufficiently pled when a plaintiff alleges the existence of a prior will. 2013 IL 114137, ¶ 40.

¶ 19 This case's procedural posture differs greatly from *DiMatteo* and *DeHart*. Both *DiMatteo* and *DeHart* alleged tortious interference with testamentary expectancy in addition to filing a timely will contest. Here, the plaintiffs did not file a will contest to effectively challenge the September Will. As a general rule, any claims attacking the validity of a will, including undue influence, must be filed within six months of the will being admitted to probate. 755 ILCS 5/8-1 (West 2012). This rule also operates to prohibit the filing of a tort claim like the one filed by the plaintiffs, unless the plaintiffs can demonstrate that the probate proceedings were not available to them due to the tortious conduct of the defendants and that the probate proceedings would not have provided them with complete relief. "If a challenger to a will fails to initiate a direct proceeding to contest the will within the six-month statutory time period, the validity of the will is established for all purposes." *Ellis*, 236 Ill. 2d at 50.

¶ 20 In *Ellis*, the plaintiff asserted that a will contest was not filed because the plaintiff was unaware that it was named a beneficiary under the prior will. *Id.* at 55-56. The trial court allowed the tort of tortious interference with testamentary expectancy to proceed even though a will contest was not filed within the statutorily prescribed time limits because the plaintiff did not have a fair opportunity to contest the will. *Id.* at 55. The court determined there was fraudulent conduct on the part of the respondent that prevented the plaintiff from filing a will contest. *Id.* at 55-56. The trial court also found the defendant's tortious conduct had caused the decedent to transfer property to the defendant prior to death and therefore a will contest would not have afforded the plaintiff with sufficient relief because the remedy available in probate does not extend to *inter vivos* transfers of property. *Id.* at 56.

¶ 21 The plaintiffs here try to analogize *Ellis*, arguing they did not file a will contest because they were not aware that they were named beneficiaries under the March Will and that the statutory limitations on the will contest should not preclude them from asserting their expectancy under the March Will. Under *Ellis*, in order for the plaintiffs to proceed with their tort claim after the six-month period to contest the September Will expired, they must demonstrate that the will contest was made unavailable to them. In order to show that the will contest was unavailable to them, the plaintiffs need to show that the defendants' tortious conduct, such as inducing the decedent to change her will, was not discovered until after the expiration of the time to contest the validity of the will. In *Ellis*, the tortious conduct was discovered after the six-month deadline had passed, which prevented the plaintiffs from contesting the will in probate, but was sufficient to sustain the tort action. Thus, the expiration of the six-month deadline for will contests did not prevent plaintiffs from bringing this action. Instead, the plaintiffs failed to show any tortious conduct on part of the defendants to intentionally interfere with the plaintiffs' expectancy. Extensive discovery was conducted in this case. After review of the discovery responses and deposition transcripts, the plaintiffs have not shown that any of the defendants knew that the March Will existed or that the March Will devised certain property to the plaintiffs. At most, the record supports an inference that Pappas was aware of a "new will," but nothing suggests she was aware of its contents or that she stood to inherit under the will. Further, Pappas did not have any expectation that Denman would be naming her as a beneficiary under the September Will. Pappas was not present at either of the August meetings with attorneys Cantlin and Steward, and she also was not present at the execution of the will. As to Burrows, all plaintiffs admitted in discovery that they had no

knowledge of Burrows exerting influence on Denman with intention to change her will or to persuade Denman to change her estate plan to his benefit. Thus, there is no evidence in the record to suggest that any of the defendants knew about the contents of the March Will or that any of the defendants knew they stood to inherit under the March Will, and no evidence to suggest that the defendants acted fraudulently in concealing the March Will from the plaintiffs or that they acted in the direction, production, or execution of the will to persuade Denman to name them as beneficiaries and disinherit the plaintiffs. The plaintiffs were not prevented from contesting the will because the six-month period had expired due to tortious conduct by the defendants. Accordingly, *Ellis* does not aid the plaintiffs' cause.

¶ 22    Because the first element of the existence of the expectancy is dispositive of the issue of tortious interference with testamentary expectancy, no further analysis under the tort action is necessary. We find the plaintiffs have not asserted an expectancy and therefore, summary judgment entered in favor of the defendants on those counts was properly granted.

¶ 23                    B. The Trial Court's Evidentiary Rulings
¶ 24                1. Trial Court's Denial of Plaintiffs' Motion to Compel
¶ 25    On June 18, 2015, the trial court denied plaintiffs' motion to compel production of responses to interrogatories and requests to produce served upon Cantlin, Steward, and FNB. Steward and FNB answered requests for interrogatories and requests to produce, but objected to filing certain responses and producing certain documents on the basis of attorney-client privilege. Steward and FNB contended that they were acting as agents of both Denman and Cantlin. An *in camera* review was conducted of the documents and the privilege logs provided by Steward and FNB. The trial court determined that the attorney-client privilege applied to the documents. Plaintiffs filed a motion to reconsider the June 18, 2015, ruling contending that an exception to the attorney-client privilege applies; specifically, when issues of undue influence and lack of testamentary capacity are alleged, the attorney-client privilege is a temporary privilege that only exists during the lifetime of the client despite the fact that no will contest was timely filed.

¶ 26    The trial court denied plaintiffs' motion to reconsider on the basis that nothing in the case law suggests that the will-contest exception to attorney-client privilege should exist in plaintiffs' tort claims. The trial court stated that once the September Will was admitted with no contest filed, it was established for all purposes, and the rationale behind the exception to the attorney-client privilege does not apply in this case because the validity of the will was established for all purposes and the distribution scheme that decedent intended to go into effect was actually going into effect. On this appeal, plaintiffs contend that the trial court erred when it determined that the exception to the attorney-client privilege did not apply to this case.

¶ 27    To compel an attorney to disclose client information, the movant must first establish that the information is not privileged. *Adler v. Greenfield*, 2013 IL App (1st) 121066, ¶ 42 (citing *In re Marriage of Decker*, 153 Ill. 2d 298, 321 (1992)). Information disclosed to a third party is not privileged, unless the third party is acting as an agent of the attorney or the client. *Id.* ¶ 44. Attorney-client privilege generally survives the client's death, however, the privilege is only a temporary one when presented in cases involving wills. *DeHart*, 2013 IL 114137 ¶ 69. Where an attorney prepares a will for a client and witnesses the same, the privilege only exists during the lifetime of the client. *Id.* The rationale behind this limited exception to the privilege is that a decedent would (if one could ask him) forgo the privilege so that the distribution scheme he

intended can be given effect. *Id.* Under the limited exception concerning will contests, a "plaintiff need only make an initial evidentiary showing that he is an heir or next of kin or that he was a recipient under a prior will" to establish he is an interested party and not subject to the privilege. *Id.* ¶ 73. Under the testamentary exception to attorney-client privilege, the privilege does not apply to issues between parties that are claiming under the will. *Lamb v. Lamb*, 124 Ill. App. 3d 687, 693 (1984). A trial court's decision whether to allow evidence that was not disclosed during pretrial discovery or whether to impose a discovery sanction is reviewed for an abuse of discretion. *In re K.I.*, 2016 IL App (3d) 160010, ¶ 56. The question of whether the attorney-client privilege prohibits the disclosure of sought-after information is reviewed *de novo*. *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 65.

¶ 28    Neither of the parties contest the existence of an agency between Denman and Steward and FNB and Cantlin. The plaintiffs assert instead that the limited exception to the attorney-client privilege exists outside of will contest cases. When the trial court first determined that the privilege applied, it analogized this case to *Adler* and determined that because the agency relationship was similar to the agency relationship analyzed in *Adler*, and because the trial court in this case also conducted an *in camera* review, which the court in *Adler* did not, the documents fall under the attorney-client privilege. The *Adler* court expressly stated that "the instant action is not a will contest. Accordingly, any communication between [the decedent], or her agents, and [her attorney] remains privileged." *Adler*, 2013 IL App (1st) 121066, ¶ 63. Plaintiffs then, in their motion to reconsider, relied upon *DeHart* and asked that the trial court interpret the underlying reasoning in *DeHart* to extend the protections of the attorney-client privilege outside of will contests. We agree with the trial court's rejection of their request.

¶ 29    Here, it is undisputed that the plaintiffs failed to contest the September Will. This action was not brought to contest the validity of the will, but instead was brought as a tort claim, asserting an intentional tortious interference with testamentary expectancy against the defendants. The case in *DeHart* was "indisputably" a will contest. *DeHart*, 2013 IL 114137, ¶ 73. There, the plaintiff had made his initial evidentiary showing that he was a potential heir and an "interested person." *Id.* The court determined that the plaintiff could succeed in making out a *prima facie* case that the privilege did not apply because it was subject to the will contest exception. Nothing in the *DeHart* case supports the plaintiffs' contention that the exception applies outside of will contest cases.

¶ 30    The plaintiffs cite this court's decision in *Eizenga v. Unity Christian School of Fulton, Illinois*, 2016 IL App (3d) 150519, when they posit that the exception to the privilege applies to non-will contest cases. *Eizenga* held that the testamentary exception to the attorney-client privilege also applies to *inter vivos* trusts. *Id.* ¶ 29. This court determined that notes and other documents of an attorney who drafted a contested trust were not privileged. *Id.* However, in the instant case, we do not have an instrument that is being contested. The September Will was established for all purposes, effectively revoking the March Will. In *Eizenga*, the trust document was being contested. Even though this court determined that an exception to the attorney-client privilege applied outside of a will contest, the exception was also being applied narrowly to a contested *inter vivos* trust. In the instant case, there is no contest to the distribution scheme that Denman executed in her September Will. In the absence of such a contest to an instrument, we will not apply the narrow exception to the attorney-client privilege.

¶ 31                    2. Trial Court's Ruling on Number of Interrogatories Served on Defendants

¶ 32        On appeal, plaintiffs contend that the trial court denied the plaintiffs the right to propound 30 interrogatories each, in effect allowing the plaintiffs a total of 150 interrogatories collectively. Specifically, plaintiffs contend that the court denied them the right to each propound 30 interrogatories. Illinois Supreme Court Rule 213(c) provides that "a party shall not serve more than 30 interrogatories, including sub-parts, on any other party except upon agreement of the parties or leave of court granted upon a showing of good cause." Ill. S. Ct. R. 213(c) (eff. Jan. 1, 2007). The committee comment to this subsection provides, "Because of widespread complaints that some attorneys engage in the practice of submitting needless, repetitious, and burdensome interrogatories, paragraph (c) limits the number of all interrogatories, regardless of when propounded, to 30 (including subparts), unless 'good cause' requires a greater number." Ill. S. Ct. R. 213, Committee Comments (revised June 1, 1995). An issue involving Rule 213 should be construed the same as a statute. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 342 (2007). Thus, a Rule 213 issue is reviewed *de novo*. *Schweickert v. AG Services of America, Inc.*, 355 Ill. App. 3d 439, 442 (2005).

¶ 33        The trial court addressed plaintiffs' argument concerning the amount of interrogatories allowed to be propounded and determined that despite plaintiffs' citing case law that each party may file 30 interrogatories, the court "[did] not find that Defendants Steward/FNB having to answer the interrogatories as submitted would be unduly burdensome." Further, the trial court ordered Steward and FNB to provide a written response to the requests. Plaintiffs have not established that Steward and FNB have failed to comply with this order. There was no error denying the plaintiffs the right to propound 30 interrogatories each because the trial court ruled in favor of their request.

¶ 34                                3. Subpoenaed Cell Phone Records

¶ 35        During discovery, plaintiffs subpoenaed Steward's personal cell phone records, and he subsequently attempted to quash the subpoena. The trial court denied the motion to quash, but instead granted the parties a protective order stating that (1) the personal cell phone records of Steward could not be used outside of the course of litigation in this case, (2) plaintiffs would not be permitted to contact any of the numbers disclosed in the subpoena that belong to bank customers and/or Steward's family or friends, (3) plaintiffs were permitted to contact any other telephone numbers disclosed by the subpoena who have knowledge of the facts of this case, and (4) in the event that there were persons who had knowledge, but were bank customers or relatives and friends of Steward, plaintiffs would obtain court permission, for good cause shown, before contacting those persons.

¶ 36        Illinois Supreme Court Rule 201(b)(1) (eff. July 1, 2014) requires full disclosure of matters relevant to the subject matter in the case. A trial court has the authority to make a protective order on its own initiative or on motion of a party or witness, to regulate discovery to "prevent unreasonable annoyance, expense, embarrassment, disadvantage or oppression." Ill. S. Ct. R. 201(c)(1) (eff. July 1, 2014). Protective orders afford litigants the opportunity to prevent public disclosure of private information tendered in discovery that would be damaging to a party's privacy. *Kaull v. Kaull*, 2014 IL App (2d) 130175, ¶ 52. As noted above, a trial court's decision whether to allow evidence that was not disclosed during pretrial discovery is reviewed for an abuse of discretion. *In re K.I.*, 2016 IL App (3d) 160010, ¶ 56.

¶ 37    Plaintiffs sought to obtain the information from Steward's private cell phone to show that defendants Steward and Pappas were in constant communication concerning Denman's estate planning affairs. The numbers on the personal cell phone contained work clients of Steward, as well as employees of the bank. Notwithstanding the entry of the order, plaintiffs already obtained evidence concerning communications made about Denman's estate planning through discovery, as evidenced by the screenshots of text messages contained in the records and various e-mails and as indicated by the plaintiffs' briefs. Plaintiffs were aware of phone records that revealed numerous phone calls between the defendants, as well as the length of some of those phone conversations. Plaintiffs were also aware of text messaging conversations between Pappas and Steward on September 11, 2012, and also that five separate phone conversations occurred between Steward and Pappas. Plaintiffs were already entitled to information via phone records concerning Steward and Pappas, and thus, subpoenaing the records from his personal cell phone containing private information concerning the bank and its clients was unreasonable. The numbers sought after by the plaintiffs included those of Steward and FNB's customers and were not in any way relevant to the issues in the plaintiffs' complaint. The plaintiffs were still able to access the phone records for calls relevant to Denman's estate planning. We find the trial court did not err in issuing the protective order.

¶ 38                          4. Trial Court's Application of Dead Man's Act

¶ 39    Plaintiffs argue that the trial court was incorrect in its application of the Dead Man's Act. 735 ILCS 5/8-201 (West 2016). Plaintiffs requested that the trial court apply the statute to bar deposition testimony by the defendants on the basis that Cantlin's conversations should be stricken because they concern conversations with the decedent and an adverse party to the lawsuit. The Dead Man's Act provides, in relevant part: "In the trial of any action in which any party sues or defends as the representative of a deceased person or person under a legal disability, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased or person under legal disability or to any event which took place in the presence of the deceased or person under legal disability ***." *Id.* The Dead Man's Act bars testimony from adverse parties or persons directly interested in the lawsuit where the representative of the deceased person sues or defends on behalf of the decedent. *In re Estate of Sewart*, 274 Ill. App. 3d 298, 308 (1995). Application of the Dead Man's Act is an evidentiary matter and will be reviewed for an abuse of discretion. *Gunn v. Sobucki*, 352 Ill. App. 3d 785, 787 (2004).

¶ 40    The trial court correctly found that the plaintiffs lacked standing to object under the Dead Man's Act. Plaintiffs cannot seek protection under the Dead Man's Act because they do not fall within the definition of "representative." " 'Representative' " is defined under the statute as: "an executor, administrator, heir or legatee of a deceased person and any guardian or trustee of any such heir or legatee, or a guardian or guardian ad litem for a person under legal disability." 735 ILCS 5/8-201 (West 2016). Here, plaintiffs are not executors, administrators, heirs, or legatees of Denman. The September Will, as previously noted, was established for all purposes. Plaintiffs have not offered any case law to show when the Dead Man's Act extends to legatees under a *prior revoked will*. Under the Dead Man's Act, conversations between the decedent and interested persons are prohibited. *Kelley v. First State Bank of Princeton*, 81 Ill. App. 3d 402, 416 (1980). Steward acted as Denman's attorney's agent and trust officer of the bank; he was not an " 'interested person' " within the meaning of the Dead Man's Act. 735

ILCS 5/8-201 (West 2016). We find that the trial court did not err in refusing to apply the Dead Man's Act.

¶ 41                    C. Dismissal of Conspiracy and Fraud Counts

¶ 42    Plaintiffs assert that the trial court erred when it dismissed counts V and VI of their second amended complaint. The trial court dismissed the counts without prejudice on April 28, 2014, and plaintiffs were granted leave to replead. Plaintiffs' third amended complaint included the same exact counts that appeared in the second amended complaint, however, they were in a red-lined, strike-through format with no additional allegations or facts pled. The trial court further clarified in its July 31, 2014, order, that the counts for conspiracy and fraud of the third amended complaint were stricken without prejudice. An amended pleading, complete in itself, supersedes the pleading that it replaces and the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn. *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 153-54 (1983). A trial court's section 2-615 dismissal is reviewed *de novo*. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). When the plaintiffs failed to replead the conspiracy and fraud counts in the third amended complaint, they ceased to be part of the plaintiffs' complaint. The trial court did not err when it granted the defendants' motion for dismissal, and it did not err when it denied plaintiffs' motion to strike the defendants motion for dismissal.

¶ 43                                 D. Punitive Damages

¶ 44    Plaintiffs assert that they sought leave to amend their complaint to include punitive damages. Plaintiffs allege that punitive damages are appropriate for each count and should have been allowed in their prayer for relief. A trial court's ruling on a plaintiff's motion to amend to add punitive damages is reviewed for an abuse of discretion. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 142. The record does not support the plaintiffs were denied leave to amend to add punitive damages. On April 28, 2014, the trial court ruled that "[p]laintiffs may include a prayer for relief which includes punitive damages" after dismissing counts V (conspiracy), VI (fraud), and VIII (breach of fiduciary duty). As noted before, plaintiffs did not incorporate counts V and VI into the third amended complaint and they were appropriately stricken by the trial court in its July 31, 2014, order for failure to replead. As to the remaining counts in the third amended complaint, counts I-IV did in fact include a request for punitive damages. Thus, the record does not support plaintiffs' contention that they were denied leave to amend their prayer for relief. We find their argument is without merit.

¶ 45                                     E. Sanctions

¶ 46    Plaintiffs assert that the trial court should have granted their motion for sanctions on the basis of a *Petrillo* violation. Defense attorneys are prohibited from engaging in *ex parte* communications with a plaintiff's treating physician. *Requena v. Franciscan Sisters Health Care Corp.*, 212 Ill. App. 3d 328, 331 (1991) (citing *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 594-95 (1986)). Violations of the rule may occur regardless of the information actually revealed. *Mondelli v. Checker Taxi Co.*, 197 Ill. App. 3d 258, 265 (1990). Enforcement of the rule protects the confidential and fiduciary relationship between a patient and her medical care providers. *Yates v. El-Deiry*, 160 Ill. App. 3d 198, 202-03 (1987). The doctrine has been extended to include other health care professionals who have treated the

patient along with the doctor. *Roberson v. Liu*, 198 Ill. App. 3d 332, 338 (1990). The standard of review for a motion for sanctions is an abuse of discretion. *Sadler v. Creekmur*, 354 Ill. App. 3d 1029, 1045 (2004).

¶ 47 Plaintiffs alleged that counsel for Steward and FNB engaged in *ex parte* communications with Denman's attending physician, Bailey, in advance of his deposition, ultimately resulting in an unfair advantage to Steward and FNB. The trial court denied plaintiffs' motion for sanctions on June 18, 2015, on the basis that the *Petrillo* doctrine did not apply to the facts of this case. They essentially ask this court to extend the *Petrillo* doctrine to include any physician who may provide testimony in litigation. Bailey was Denman's treating physician on September 13, 2012. Denman is not a plaintiff to the instant case but instead was involved as a nonparty whose estate planning is at issue. The trial court found that the doctrine applies when there is an adversary relationship between defense counsel and plaintiff's treating physician. As Bailey was not the treating physician of any of the plaintiffs, that adversarial relationship found in *Petrillo* does not exist on these facts. Further, counsel for Steward and FNB admitted to conversations with Bailey's staff for purposes of deposition scheduling. It was also communicated by counsel for Steward and FNB to other parties that Bailey's staff confirmed Bailey only tended to Denman one day, on September 13, 2012. We consider the evidence and the record do not support the fact that counsel for Steward and FNB engaged in *ex parte* communications directly with Bailey. Even though the *Petrillo* doctrine has been extended to staff members operating under attending physicians, the communications with Bailey's staff were solely for the purposes of scheduling the depositions. Thus, any communications made by counsel for Steward and FNB do not amount *ex parte* communications. We reject the plaintiffs' invitation to extend the *Petrillo* doctrine to include any physician who may offer testimony in litigation. The trial court properly declined to apply *Petrillo* or to extend the doctrine to include a nontreating physician and scheduling information.

¶ 48                                        CONCLUSION
¶ 49 For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

¶ 50 Affirmed.

¶ 51 PRESIDING JUSTICE HOLDRIDGE, dissenting:
¶ 52 I respectfully dissent. I disagree with the majority's holding that summary judgment was appropriate on the tort claim. The majority cites *In re Estate of Ellis*, for the proposition that "[i]f a challenger to a will fails to initiate a direct proceeding to contest the will within the six-month statutory time period, the validity of the will is established for all purposes." 236 Ill. 2d 45, 50 (2009). The *Ellis* court further noted, however, that the tort of intentional interference with an inheritance "does not contest the validity of the will; it is a personal action directed at an individual tortfeasor." *Id.* at 52. Noting that the remedy in a tort claim is personal against the alleged tortfeasor, and not an action against the estate, the *Ellis* court held that the application of the six-month statutory time frame provided under section 8-1 of the Probate Act of 1975 (755 ILCS 5/8-1 (West 2012)) to a claim for tortious interference with a testamentary expectancy was erroneous as a matter of law. *Ellis*, 236 Ill. 2d at 51. The *Ellis* court noted that the six-month time limit provided in the Probate Act of 1975 could nevertheless restrict the filing of a tort action "where a plaintiff forgoes an opportunity to file a tort claim within the

six-month period for a will contest." *Id.* at 53. The *Ellis* court clearly limited this exception to instances where the plaintiff had sufficient knowledge of the facts necessary to contest the will during the six-month time for filing a will contest, but chose not to do so. *Id.* at 55-56.

¶ 53    In the instant matter, the record reveals no facts which would support a finding that the plaintiffs had sufficient knowledge of the facts necessary to contest the will during the six-month time period for filing a will contest. The plaintiffs' case rests upon the existence of the March Will and their knowledge of its existence. There is nothing in the record to establish conclusively that any of the plaintiffs had knowledge of the existence of that will or their status under that will within the six-month time period for filing a will contest. Without clear evidentiary proof that such knowledge existed, there is no basis upon which to conclude that the plaintiffs could have presented their claim within the statutory period. At best, the matter of plaintiffs' knowledge is a matter of disputed fact. Thus, the circuit court erred, as a matter of law, in granting summary judgment on the tortious interference counts.

¶ 54    I also disagree with the majority's conclusion that the mere existence of the March Will is insufficient to establish the expectancy element of the plaintiffs' tort claim. It is well-settled that the existence of an expectancy is sufficiently pled where the plaintiff alleges the existence of a prior will. *DeHart v. DeHart*, 2013 IL 114137, ¶ 40; *In re Estate of DiMatteo*, 2013 IL App (1st) 122948, ¶ 80 ("allegation that a prior will existed is a sufficient allegation of an expectancy"). Here, the plaintiffs pled the existence of the March Will in their tortious interference counts. The law is clear that they were not required to plead any other facts to establish the expectancy element of the tort claim.

¶ 55    Regarding the trial court's denial of the plaintiffs' motion to compel production of certain discovery based upon attorney-client privilege, I would vacate the court's ruling and remand for further proceedings in light of the reversal of summary judgment in the tortious interference claim. The question of whether the attorney-client privilege prohibits disclosure of sought-after information is subject to *de novo* review. *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 65. Generally, attorney-client privilege does not apply to parties claiming under a will. *Lamb v. Lamb*, 124 Ill. App. 3d 687, 693 (1984). Moreover, courts have allowed parties seeking information from attorneys regarding deceased clients to access that information where the cause of action included tortious interference with a testamentary expectancy (*DeHart*, 2013 IL 114137, ¶ 73) and a contest involving an *inter vivos* trust. *Eizenga v. Unity Christian School of Fulton, Illinois*, 2016 IL App (3d) 150519. The tortious interference claim, involving a testamentary expectancy, sufficiently involves the rights of the claimants under a will to invoke the testamentary exception to the attorney-client privilege. Since I would reverse and remand the matter of tortious interference, I would likewise reverse and remand all discovery issues for consideration in light of the case going forward on the tort claim.

¶ 56    Since I would reverse the circuit court's grant of summary judgment on the tortious interference count, I would remand the matter to the circuit court without ruling on the remaining counts of the complaint.