2022 IL App (1st) 220247

Nos. 1-22-0247, 1-22-0504 (cons.)

Third Division
November 16, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| BRIAN LESS, Individually and as Independent Administrator of the Estate of Dayna Less, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | No. 19 L 012720 |
| v. | ) ) ) | |
| | ) | The Honorable |
| MERCY HOSPITAL AND MEDICAL CENTER, an Illinois Corporation; SDI SECURITY, INC., an Illinois Corporation; TRINITY HEALTH CORPORATION, an Indiana Corporation; and MARGARITA CADENA, as Independent Administrator for the Estate of Juan Lopez, Deceased | ) ) ) ) ) ) ) ) | Karen L. O'Malley, Judge Presiding. |
| Defendants | ) ) ) | |
| (Mercy Hospital and Medical Center, an Illinois Corporation, Defendant-Appellant). | ) ) ) ) | |

_____

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Reyes and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    In November 2018, an armed assailant shot and killed three people at Mercy Hospital and Medical Center (Mercy Hospital) in Chicago, Illinois. About two months later, the hospital retained two investigators to determine if safety protocols could be improved. Each investigator generated a report of his findings. Subsequently, Brian Less (plaintiff), the father of one of the victims, filed a wrongful death suit against the hospital. During written discovery, plaintiff requested the production of the investigators' reports. Mercy Hospital refused to produce the reports, citing privilege under the Medical Studies Act (735 ILCS 5/8-2101 (West 2016)), which exempts from production documents "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation." In response, plaintiff argued that the Medical Studies Act was inapplicable to the reports at issue. Ultimately, the trial court ordered production of both reports. Mercy Hospital still refused to produce the reports and instead moved the trial court for a finding of friendly civil contempt in order to challenge the discovery orders. The trial court granted the motions. On appeal, Mercy Hospital challenges the orders requiring production of the reports. For the following reasons, we affirm the trial court's orders requiring production of both reports but vacate the findings of friendly civil contempt and fines.

¶ 2                                I. BACKGROUND

¶ 3    On November 18, 2018, Juan Lopez shot and killed three people at Mercy Hospital in Chicago. On November 21, 2019, plaintiff filed a complaint against the hospital[1] on behalf of his deceased daughter, Dayna Less, who was killed by Lopez. In his complaint, plaintiff

---

[1]The complaint also named Mercy Hospital's parent company, Trinity Health Corporation, as well as Mercy Hospital's security guard provider, SDI Security, Inc., as defendants.

alleged that defendants' numerous negligent acts and omissions, including their failure to lock the lobby doors or to timely announce the presence of an active shooter, resulted in Dayna's death.

¶ 4        In January 2019, less than two months after the shootings, Mercy Hospital retained William Sako of Telgian Engineering and Consulting, and Frederick A. Carmen of Holy Cross Health to assess whether safety improvements could be made at the hospital. Sako and Carmen generated reports of their findings (Sako report and Carmen report, respectively). Sako completed his report on January 22, 2019, and Carmen completed his report on April 24, 2019.

¶ 5        On November 21, 2019, plaintiff filed his initial complaint consisting of 12 counts, including wrongful death and survival claims. Written discovery commenced shortly after the filing of the complaint. Plaintiff sought to determine, among other things, how and why Lopez was undetected on the hospital premises for over an hour and a half and then reentered the hospital through unlocked doors several minutes after he fired multiple shots in Mercy Hospital's parking lot (killing his first victim in plain view of hospital security) and how and why Mercy Hospital security failed to announce a "Code Silver" to warn people about the active shooter situation until well after Dayna was dying on the floor of the hospital lobby.

¶ 6        On December 31, 2019, plaintiff filed his first set of interrogatories to Mercy Hospital, which included a request for the identification of the people and entities that investigated the shootings. Mercy Hospital objected to answering this interrogatory on the basis of attorney-client privilege, insurer-insured privilege, attorney work product, and the Medical Studies Act and provided a privilege log to plaintiff and the court identifying the Sako and Carmen reports. In support of its privilege claims, Mercy Hospital submitted the affidavit of Lisa Vidovic, Mercy Hospital's director of quality and patient safety. Vidovic averred that on January 10,

3

2019, Mercy Hospital's Quality and Safety Committee "authorized assessments into the Department of Public Safety by third parties to identify if opportunities exist for improvement in safety." She further attested that the Sako and Carmen reports were "generated at the direction of the [hospital's] Quality and Safety Committee with the goal of determining if any opportunities for improvement and safety at [the hospital existed] and recommendations to the Department of Quality and Safety in that area would be made."

¶ 7   After learning about the existence of the Sako and Carmen reports, plaintiff issued a subpoena to Sako requesting all documents relating to the shootings that were in his possession, custody, or control. Mercy Hospital then filed a motion to quash plaintiff's subpoena, claiming that Sako's report was privileged under the Medical Studies Act and that Sako was a consultant in the litigation. Plaintiff filed a response in opposition to the motion to quash and filed a cross-motion to compel production of the reports.

¶ 8   The trial court heard oral arguments on the motion to quash and the cross-motion to compel and took them under advisement. On September 28, 2021, plaintiff moved to compel the production of the documents that Mercy Hospital (and Trinity Health Corporation) were withholding as privileged, including the reports at issue. The trial court conducted an *in camera* review of the reports but did not make any specific findings as to that review other than what was contained in its ruling. On January 10, 2022, the trial court ruled that the Carmen report was not privileged under the Medical Studies Act because Carmen was retained to evaluate security measures, not the quality of patient care as contemplated by the Medical Studies Act. The court also ruled that the Sako report was protected by litigation consultant work-product privilege under Illinois Supreme Court Rule 201(b)(3) (eff. July 1, 2014).

¶ 9     Disagreeing with the trial court's ruling that the Carmen report was not privileged, Mercy Hospital moved for the entry of an order finding Mercy Hospital to be in friendly civil contempt pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), which permits an interlocutory appeal of "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." It also requested a fine in the amount of $50. The trial court granted the motion.

¶ 10    On February 22, 2022, Mercy Hospital filed a timely notice of appeal of three orders: 1) the January 10, 2022, order that found the Carmen report was not privileged, 2) the January 18, 2022, order that required production of, *inter alia*, the Carmen report, and 3) the January 28, 2022, order that held Mercy Hospital in friendly civil contempt.

¶ 11    Disagreeing with the trial court's ruling that the Sako report was protected, plaintiff moved the trial court to reconsider its ruling. On March 3, 2022, the trial court heard oral arguments on that motion. The trial court found that it had erred in concluding that the Sako report was protected under Rule 201(b)(3). The court reasoned that although Sako had eventually been retained as a consultant by Mercy Hospital, he was initially retained by the hospital's Quality and Safety Committee to assess its security measures. The report that was generated was based on that initial assessment of security measures that existed before Sako was retained as a consultant. Since Rule 201(b)(3) pertains only to consultants retained in anticipation of litigation, the trial court found it inapplicable to the Sako report. Therefore, the trial court ordered production of the Sako report.

¶ 12    Mercy Hospital then followed the same procedure to challenge the ruling requiring production of the Sako report: it moved the court to enter an order holding Mercy Hospital in friendly civil contempt. The trial court granted that motion and fined Mercy Hospital $50.

¶ 13    On April 12, 2022, Mercy Hospital filed a timely notice of appeal of the two orders: (1) the March 4, 2022, order granting plaintiff's motion to reconsider and requiring Mercy Hospital's production of the Sako report and (2) the March 16, 2022, order holding Mercy Hospital in friendly civil contempt.

¶ 14    These appeals were consolidated and are now properly before this court for consideration.

¶ 15                                II. ANALYSIS

¶ 16    On appeal, Mercy Hospital claims that the trial court erred in ordering production of the Carmen and Sako reports. The instant appeal was filed pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), which permits an interlocutory appeal of "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." Here, the trial court found defendant in friendly civil contempt of court and imposed a monetary penalty. Accordingly, we have jurisdiction to consider defendant's appeal. "Because discovery orders are not final orders, they are not ordinarily appealable." *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). "However, it is well settled that the correctness of a discovery order may be tested through contempt proceedings." *Norskog*, 197 Ill. 2d at 69. "When [a party] appeals contempt sanctions imposed for violating, or threatening to violate, a pretrial discovery order, the discovery order is subject to review. [Citation.] Review of the contempt finding necessarily requires review of the order upon which it is based." *Norskog*, 197 Ill. 2d at 69. Before addressing the two discovery orders at issue, we set forth the applicable standard of review.

¶ 17    Whether a privilege under the Medical Studies Act applies to reports generated by safety protocol investigators is a question of law that we review *de novo*. See *Eid v. Loyola University Medical Center*, 2017 IL App (1st) 143967, ¶ 40. *De novo* consideration means we perform

the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 18     The Medical Studies Act provides, in relevant part:

"All information, interviews, reports, statements, memoranda ***or other data of *** medical organizations under contract with health maintenance organizations or with insurance or other health care delivery entities or facilities, *** or committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, or their designees (but not the medical records pertaining to the patient), *used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation*, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services ***." (Emphasis added) 735 ILCS 5/8-2101 (West 2016).

¶ 19     Thus, to be privileged under the Medical Studies Act, Mercy Hospital must establish that the reports were (1) documents of (2) an organization covered under the Medical Studies Act that (3) were used for one of the purposes specified in the Medical Studies Act.

¶ 20                                A. The Carmen Report

¶ 21     On appeal, Mercy Hospital argues that the Carmen report is privileged under the Medical Studies Act. As noted above, the Carmen report was generated by Frederick A. Carmen of Holy Cross Health to assess whether safety improvements should be made at the hospital.

¶ 22    There does not appear to be a dispute regarding whether the Carmen report is a "document" or whether Mercy Hospital is an organization covered under the Medical Studies Act. The point of contention is whether the Carmen report was used for one of the purposes specified in the Medical Studies Act. We therefore start with the text and purpose of the Medical Studies Act.

¶ 23    As noted above, the Medical Studies Act protects, in relevant part, documents "used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation." The purpose of the Medical Studies Act "is to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Roach v. Springfield Clinic*, 157 Ill. 2d 29, 40 (1993). The Medical Studies Act also serves "to encourage candid and voluntary studies and programs used to improve hospital conditions and patient care or to reduce the rates of death and disease." *Niven v. Siqueira*, 109 Ill. 2d 357, 366 (1985). "The statute is premised on the belief that, absent the statutory peer-review privilege, physicians would be reluctant to sit on peer-review committees and engage in frank evaluations of their colleagues." *Roach*, 157 Ill. 2d at 40. "The Act was never intended to shield hospitals from potential liability [citation], and legal advice is not a goal of the protection offered by the Act." (Internal quotation marks omitted.) *Webb v. Mount Sinai Hospital & Medical Center of Chicago, Inc.*, 347 Ill. App. 3d 817, 825 (2004).

¶ 24    In the case at bar, Carmen was retained by the hospital to assess the security department at the medical center and provide a report of his findings. The Medical Studies Act, however, extends privilege to documents related to patient care. Though we recognize that security measures may conceivably bear on patient care, such a broad reach is not contemplated by the

Medical Studies Act, as its very language specifically refers to "improving patient care" and has no mention regarding hospital security or safety. 735 ILCS 5/8-2101 (West 2016).

¶ 25     Mercy Hospital asserts that Carmen's report dealt with internal quality control and that is sufficient to bring it under the scope of the Medical Studies Act. However, the plain language of the statute also states that the internal quality control must be "for the purpose of reducing morbidity or mortality." In our cases dealing with the Medical Studies Act, morbidity and mortality are metrics used in the patient care context, not in the security context. Moreover, Mercy Hospital has not identified a single case to support its broad reading of the Medical Studies Act language. In other words, it can point to no case where a document unrelated to the provision of patient medical care has been found to be privileged under the Medical Studies Act.

¶ 26     We turn to our prior decisions in *Giangiulio v. Ingalls Memorial Hospital*, 365 Ill. App. 3d 823 (2006), and *Dunkin v. Silver Cross Hospital*, 215 Ill. App. 3d 65 (1991), for further guidance. In *Giangiulio*, a patient at a hospital was attacked by another patient during her stay, and filed a lawsuit against the hospital alleging that the hospital was negligent because it failed to prevent the attack by a third party—the other patient. *Giangiulio*, 365 Ill. App. 3d at 826. During discovery, the victim in that case requested production of numerous documents related to the treating staff and hospital employees, including their identities, addresses, and phone numbers. *Giangiulio*, 365 Ill. App. 3d at 826-27. This court, noting the narrow scope of the Medical Studies Act, held that the Medical Studies Act does not cover a document "that is not used in connection with a program or study designed to improve internal quality control, patient care or reduce morbidity or mortality." *Giangiulio*, 365 Ill. App. 3d at 835. The court found that because the information requested regarding treating staff and hospital was "not

9

quality assurance information involving patient care," the Medical Studies Act did not apply. *Giangiulio*, 365 Ill. App. 3d at 835-36.

¶ 27    In *Dunkin*, a hospital visitor fell on a hospital's stairway and sued the hospital for injuries sustained caused by negligence. *Dunkin*, 215 Ill. App. 3d at 66. During discovery, the plaintiff there requested incident reports of past slip-and-falls on the staircase at issue. *Dunkin*, 215 Ill. App. 3d at 66. The hospital refused to produce the reports based on privilege, and the trial court ordered its production. *Dunkin*, 215 Ill. App. 3d at 66-67. The appellate court affirmed the trial court's finding that the Medical Studies Act did not apply because the incident reports were not related to patient medical care. *Dunkin*, 215 Ill. App. 3d at 68.

¶ 28    The information and documents requested in *Giangiulio* and *Dunkin* did not deal with patient care, and therefore, the Medical Studies Act did not apply. Here, as in those two cases, the report at issue does not relate to patient care and is therefore not privileged under the Medical Studies Act.

¶ 29    Mercy Hospital relies on the *Zajac v. St. Mary of Nazareth Hospital Center*, 212 Ill. App. 3d 779 (1991), and *Flannery v Lin*, 176 Ill. App. 3d 652 (1988), decisions, arguing they support their claim of privilege. In *Zajac*, a medical malpractice case, the plaintiff sought information regarding the hospital's review of one of its doctors. *Zajac*, 212 Ill. App. 3d at 789. Moreover, the hospital review procedures there were used for internal quality control, improving patient care, and reducing mortality and morbidity. *Zajac*, 212 Ill. App. 3d at 789. Because these are all purposes specially enumerated in the Medical Studies Act, the court determined they were privileged. *Zajac*, 212 Ill. App. 3d at 789.

¶ 30    In *Flannery*, the patient sought production of the "code blue evaluation report." *Flannery*, 176 Ill. App. 3d at 655. An affidavit submitted therewith explained that that report was part of

the hospital's internal quality control procedure: the report was presented to the hospital's "ICU/CCU" committee, which then made policy recommendations to the department of medicine regarding which changes in procedure might improve the quality of patient care. *Flannery*, 176 Ill. App. 3d at 658. The court found that this uncontroverted affidavit adequately showed that the report was used for internal quality control and therefore privileged. *Flannery*, 176 Ill. App. 3d at 658.

¶ 31    Mercy Hospital's reliance on the *Zajac* and *Flannery* cases is not persuasive. The *Zajac* and *Flannery* cases, both of which were medical malpractice cases, are distinguishable from the case at bar because the information sought in those cases dealt directly with patient care and quality control and was therefore privileged under the Medical Studies Act. Since Carmen was retained to investigate the safety and security protocols at the hospital and not for the purpose of improving patient care, his report on his findings falls outside the scope of the Medical Studies Act. We note that, at oral argument, Mercy Hospital was unable to identify anything in Carmen's report (or Sako's report) that dealt specifically with improving patient care. Accordingly, Mercy Hospital cannot rely on privilege under the Medical Studies Act to withhold the Carmen report and must produce it.

¶ 32                                  B. The Sako Report

¶ 33    Regarding the Sako report, Mercy Hospital asserts two bases for privilege: the Medical Studies Act and Illinois Supreme Court Rule 201(b)(3) (eff. July 1, 2014). As noted above, the Sako report was generated by William Sako of Telgian Engineering and Consulting at the behest of Mercy Hospital's Quality and Safety Committee to identify whether opportunities existed for improving safety at the hospital.

¶ 34        Regarding the claim of privilege under the Medical Studies Act, we find that the Sako report is not privileged for the same reasons set forth above in our discussion on the Carmen report. We turn now to Mercy Hospital's claim under Illinois Supreme Court Rule 201(b)(3) (eff. July 1, 2014), which reads, in relevant part,

> "Consultant. A consultant is a person who has been retained or specially employed in anticipation of litigation or preparation for trial but who is not to be called at trial. The identity, opinions, and work product of a consultant are discoverable only upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject matter by other means."

¶ 35        In the case at bar, Vidovic's affidavit indicates that Sako was retained on January 10, 2019, at the behest of Mercy Hospital's Quality and Safety Committee to determine whether safety improvements could be made. On January 11, 2019, he was retained as a consultant by Mercy Hospital's counsel. Thus, Sako was retained by the hospital for two separate roles. The report that he generated regarding safety improvements was the product of his role in assessing safety protocols at the hospital. Nothing in the record indicates that the report was generated in anticipation of litigation. Moreover, based on the *in camera* review undertaken by the trial court, there is nothing to indicate that the report contained any privileged discussions between Sako and Mercy Hospital's counsel. Rather, as the trial court noted, the report detailed "meetings that [Sako] conducted in the generation of the report, and that included an on-site visit, meeting with the director of public safety, and meetings with various hospital personnel and stakeholders."

¶ 36    Since Sako's report was generated in connection with his role as a safety and security investigator, the consultant litigation privilege under Rule 201(b)(3) does not apply to his report, and it must be produced.

¶ 37                                    C. Contempt Findings

¶ 38    Despite our conclusion requiring production of the two reports, we nevertheless vacate the trial court's contempt findings. It is appropriate for a party to request that a contempt order be entered against it so that party may seek immediate appeal of a trial court's discovery order. *Webb*, 347 Ill. App. 3d at 828. "In such situations, where the party sought the order in good faith and was not contemptuous of the trial court's authority, we may vacate the contempt order even when we find that the trial court's discovery order was proper." *Webb*, 347 Ill. App. 3d at 828 (citing *Berry v. West Suburban Hospital Medical Center*, 338 Ill. App. 3d 49, 57 (2003)). In the case at bar, Mercy Hospital appropriately sought review of discovery orders requiring the production of documents it believed were privileged. Accordingly, we vacate the contempt orders and accompanying fines entered against Mercy Hospital.

¶ 39                                    III. CONCLUSION

¶ 40    For the reasons set forth above, we affirm both trial court orders requiring production of the two reports at issue. Both reports fall outside of the scope of the Medical Studies Act as well as Rule 201(b)(3). However, despite our findings as to the trial court's discovery orders, we nevertheless vacate the trial court's contempt findings.

¶ 41    Affirmed in part and vacated in part.

13

*Less v. Mercy Hospital & Medical Center*, 2022 IL App (1st) 220247

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-012720; the Hon. Karen L. O'Malley, Judge, presiding. |
| **Attorneys for Appellant:** | Christopher M. Daddino and Grace Burner, of Cassiday Schade LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Matthew J. Piers, Mark S. Dym, Kate E. Schwartz, and Justin Tresnowski, of Hughes Socol Piers Resnick & Dym, Ltd., of Chicago, for appellee. |