2023 IL App (1st) 220875-U

SECOND DIVISION
March 21, 2023

No. 1-22-0875

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DOOR PROPERTIES LLC, an Illinois limited liability company, on behalf of itself and as agent for WILDWOOD, LLC, an Illinois limited liability company and CAROL SERRANI ANDERSON, an individual, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | No. 10 L 12931 |
| BAKER HARTLEY, P.C., | ) ) | |
| Respondent-Appellant | ) ) | |
| (Ayad M. Nahlawi, an individual, | ) ) | Honorable Thomas More Donnelly, |
| Defendant). | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   We affirm in part and reverse in part the judgment of the circuit court of Cook County granting petitioner's Petition For Rule to Show Cause for respondent's failure to respond to petitioner's subpoena; the documents sought by the subpoena are presumed privileged under the attorney-client privilege but the documents do not contain the attorney's work product as defined by the rule; regardless, respondent failed to comply with the subpoena in a good faith effort to secure an interpretation of the issue, therefore the finding of contempt should not stand.

¶ 2    Petitioner, Door Properties, obtained a $750,000 judgment against Ayad M. Nahlawi and

engaged in years of litigation in an attempt to collect the judgment. Petitioner sought materials to

discover whether Ayad Nahlawi financially benefitted from the recent death of his father Mamoun Nahlawe.

¶ 3    In its efforts to collect the judgment against Ayed, petitioner subpoenaed Baker Hartley, P.C., respondent, who were the estate planning attorneys for the parents of Ayed, for "[a]ny and all documents provided to the law firm of Baker Hartley by Ayad Nahlawi, Mamoun Nahlawe, or Buthina Kabakibi [(Ayed's mother)], *** which were provided for the purposes of *** estate planning ***. Any and all estate planning documents prepared for Ayad Nahlawi, Mamoun Nahlawe, or Buthina Kabakibi by the law firm of Baker Hartley ***."

¶ 4    Respondent, Baker, objected to the subpoena asserting the documents sought are protected by the attorney-client privilege and the work product doctrine.

¶ 5    Door Properties filed a Petition for a Rule to Show Cause against Baker to show cause why respondent should not be held in contempt for failing to respond to a subpoena.

¶ 6    Following a hearing, the trial court granted the petition, made a finding that neither the attorney-client privilege nor the work product privilege was applicable, and issued a rule to show cause against respondent. Following full briefing on respondent's motion to reconsider, the trial court denied respondent's motion. The trial court granted respondent's oral motion for a finding of "friendly contempt" for its refusal to produce the documents described in the trial court's order. This appeal followed.

¶ 7    For the following reasons, we affirm in part and reverse in part.

¶ 8                                    BACKGROUND

¶ 9    This appeal arises from ongoing litigation between petitioner and Ayad Nahlawi. Those matters are accessory to the issue in this appeal and we will confine our discussion to matters directly related to the issues raised.

¶ 10                                    PROCEDURAL HISTORY

¶ 11    The course of the litigation concerning petitioner's efforts to obtain material from respondent and respondent's efforts in opposition have a significant impact on our resolution of this appeal. As will be demonstrated herein, "what respondent argued and when" significantly impacts the posture from which we will decide this case. Thus, we set that information out in as much detail as we think necessary to an understanding of our disposition.

¶ 12    On July 26, 2021, petitioner issued a subpoena for records deposition against respondent. The subpoena commanded production of the following:

> "Any and all documents provided to the law firm of Baker Hartley by Ayad Nahlawi, Mamoun Nahlawe, or Buthina Kabakibi, or anyone else acting on their behalf, which were provided for the purposes of discussing, implementing, preparing, or executing estate planning for Ayad Nahlawi, Mamoun Nahlawe, or Buthina Kabakibi. Any and all estate planning documents prepared for Ayad Nahlawi, Mamoun Nahlawe, or Buthina Kabakibi by the law firm of Baker Hartley, including, but not limited to, wills, trusts, powers of attorney for property or healthcare, living wills, letters of direction, land trusts and the like."

¶ 13    On August 19, 2021, respondent wrote a letter to petitioner's attorney objecting to the entirety of the subpoena request. Respondent's letter stated that the "estate planning client materials and documents requested remain protected by the attorney-client and attorney work product privileges and therefore cannot be produced." Respondent's letter noted that the attorney-client privilege "exists so clients can confide freely and fully in their attorneys and then persists after death to ensure confidential information will not be disseminated to others

*especially in consideration of the extremely personal and private nature of estate planning.*" (Emphasis added.)

¶ 14 On September 16, 2021, petitioner filed a Petition for a Rule to Show Cause against respondent for its failure to respond to the subpoena. The petition states, in pertinent part, as follows:

"10. Baker Hartley has asserted two privileges: attorney-client and work product.

11. The attorney-client privilege in this situation is not absolute. Illinois law unequivocally provides several exceptions, including inheritance disputes, to the attorney-client privilege."

The Petition for a Rule to Show Cause never challenged whether the material that was the subject of the subpoena was protected by the attorney-client privilege. Instead, the petition argued:

"12. In such cases [(referencing a will contest)], if the decedent's attorney has documentation concerning the decedent's testamentary intent, then the attorney must supply that information if subpoenaed and cannot invoke attorney-client privilege. The privilege no longer exists in such situations.

13. The corollary to this case is striking. While not a will contest, Kabakibi and Nahlawe have asserted that there are no estate planning documents that exist or that were prepared for them. The subpoena at issue, in large part, goes precisely to determine whether or not that representation to the Court is accurate."

¶ 15    Thus, petitioner did not argue that the attorney-client privilege does not apply; instead, petitioner argued the will contest exception to the attorney-client privilege applied.  The questions of whether the attorney-client privilege applied and whether all the elements were proven were not placed at issue until the after petition for rule was fully briefed, argued and decided by the trial court.

¶ 16    Following full briefing by the parties and a hearing the trial court granted the petition for a rule to show cause. The trial court's order found: "Plaintiff's Petition for Rule against Baker Hartley, PC is granted. The Court ruled that none of the documents produced for *in camera* inspection are protected by the attorney-client privilege as articulated by (*Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 119 (1982))"[1], a case not argued or cited by either party in their dispute whether the will contest exception applied to this case. The trial court's order never mentions the will contest exception to the attorney-client privilege.

¶ 17    On November 29, 2021, respondent filed a motion to reconsider the trial court's order granting the petition. Respondent's motion to reconsider argued that the trial court erred in its application of the attorney-client privilege first because the privilege applies, and second because petitioner failed to demonstrate an exception to the privilege. In support of the first assertion,

---

[1]    In the specific portion of *Consolidation Coal* the trial court cited, this court articulated what must be shown in the first instance to give rise to the attorney-client privilege and not what must be shown to apply any exception to the privilege, stating as follows:

> "[T]he burden of showing facts which give rise to the privilege rests on the one who claims the exemption. ([Citations.]) Moreover, the claimant must show *certain threshold requirements in order to avail itself of the privilege*, including a showing that the communication originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential. ([Citations.])" *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 119 (1982).

respondent argued "[t]he records designated by Baker Hartley satisfy all privilege elements under Illinois law." Respondent argued in support of separate elements, including the following argument: "Third, the communications are confidential in the strictest meaning of that term: they were sent only between Defendant, as the client, and Keith Baker, as the attorney, and relate to extremely personal and private estate planning matters, not to any other recipients."

¶ 18    In support of its argument that petitioner failed to demonstrate an exception to the attorney client privilege, respondent argued that the attorney-client privilege "presumptively applied to all communications between Baker Hartley, Defendant, Kabakibi, and Nahlawe." Respondent cited *In re Marriage of Decker*, 153 Ill. 2d 298, 328-29 (1992), for the proposition that the party challenging the privilege implicitly accepts the assertion of the privilege by failing to contest it and claiming instead that an exception to the privilege applies and noted that in this case, petitioner argued that the will contest exception applied.

¶ 19    On December 29, 2021, petitioner filed a response to the motion to reconsider. Petitioner's response to the motion to reconsider cited for the first time *Consolidation Coal* and argued it applies in this case and the communications in this case do not satisfy that standard (although petitioner failed to expressly articulate the standard), and that the attorney-client privilege does not apply because none of the communications contain legal advice. Petitioner's response to respondent's motion to reconsider did not address any other element giving rise to the attorney-client privilege in the first instance.

¶ 20    On April 26, 2022, following full briefing by the parties and a hearing, the trial court denied respondent's motion to reconsider, ordered production of all but two documents for which respondent claimed a privilege, and set a date for respondent to show cause for its failure to respond to the subpoena. This time, the trial court expressly found that certain documents "are

not protected by the attorney-client privilege" because respondent "fails to support the claim that these documents were expressly made in confidence or could reasonably believe under the circumstances would be understood as such." The court found that some of the communications involved "non-parties" (to this litigation) Mamoun Nahlawe and Buthina Kabakibi. Without explanation, the trial court also found in its order that "[a]ttorney-client privilege protections are waived when the allegedly confidential communications are disclosed to someone other than the attorney, client, or one of their agents."

¶ 21    On May 17, 2022, the trial court entered an order granting respondent's oral motion for a finding of "friendly contempt" for its refusal to produce the documents described in the court's order denying respondent's motion to reconsider. The trial court found respondent "in friendly contempt of court," and imposed a penalty of $50.00.

¶ 22    This appeal followed.

¶ 23                                   ANALYSIS

¶ 24    "Whether a party is guilty of contempt is a question of fact for the trial court, and we will not disturb its finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *John Doe Corp. 1 v. Huizenga Managers Fund, LLC*, 2021 IL App (2d) 200513, ¶ 94. Nonetheless, "when an attorney's noncompliance with a discovery order is based on a good faith effort to secure an interpretation of an issue to serve his or her client and the court, a civil contempt finding should not stand. [Citations.]" (Internal quotation marks omitted.) *Id*. A discovery order is not a final order and therefore is ordinarily not appealable. *Less v. Mercy Hospital & Medical Center*, 2022 IL App (1st) 220247, ¶ 16. But, "the correctness of a discovery order may be tested through contempt proceedings. [Citation.]" (Internal quotation marks omitted.) *Id*. Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016) permits an

interlocutory appeal of "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." *Id.*

¶ 25                    WHETHER THE ATTORNEY-CLIENT PRIVILEGE APPLIES

¶ 26    An appeal of a contempt sanction pursuant to Rule 304(b)(5) subjects the underlying discovery order to review. *Id.* ("Review of the contempt finding necessarily requires review of the order upon which it is based."). To that question, we apply the standard of review applicable to the underlying discovery order upon which the contempt finding is based. See *Less*, 2022 IL App (1st) 220247, ¶ 17 (applying standard of review applicable to questions of law to question of whether a privilege under the Medical Studies Act applied). In this case, "[w]hether the attorney-client privilege or any exception thereto exists is reviewed *de novo. Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107, ¶ 65 (citing *Norskog v. Pfiel,* 197 Ill. 2d 60, 71 (2001)).

¶ 27    "The attorney-client privilege, *which protects both the client's communications to the attorney and the attorney's advice to the client*, is one of the oldest privileges for confidential communications in common law." (Emphasis added.) *John Doe Corp. 1*, 2021 IL App (2d) 200513, ¶ 71 (citing *People v. Radojcic*, 2013 IL 114197, ¶¶ 39-40). "However, 'Illinois also has a general public policy of strongly encouraging disclosure of information, with a view to ascertaining the truth, which is essential to the proper disposition of a lawsuit,' such that the 'attorney-client privilege is to be strictly confined within its narrowest bounds.' [Citation.]" *Id.* (quoting *Robert R. McCormick Foundation v. Arthur J. Gallagher Risk Management Services, Inc.*, 2019 IL 123936, ¶ 20).

¶ 28    Our supreme court has held that "when there is an attorney-client relationship in which an attorney and client have communicated in a professional capacity, as occurred in this case, there is a rebuttable presumption that their communication is privileged." *In re Marriage of Decker*,

153 Ill. 2d at 328-29 (citing *People v. Adam,* 51 Ill. 2d 46, 49 (1972)). "If, however, the opposing party challenges the presumption, then the proponent of the privilege must prove the existence of the essential elements giving rise to the privilege." *Id.* at 329.

¶ 29    In *Decker*, our supreme court addressed a claim that a party never properly invoked the attorney-client privilege. *Id.* at 328. Our supreme court acknowledged the rule that "a mere assertion that a matter is confidential and privileged will not suffice to prove the privilege, if at all challenged by the opposing party," but found that the court had implicitly accepted the assertion of attorney-client privilege "by failing to contest it during the hearing, claiming only that the crime-fraud exception to the privilege was applicable." *Id.* The *Decker* court concluded that "when there is an attorney-client relationship in which an attorney and client have communicated in a professional capacity, as occurred in this case, there is a rebuttable presumption that their communication is privileged" unless "the opposing party challenges the presumption." But where the record contained no evidence of a challenge to the existence of the privilege, that argument was waived. Because there was no evidence in the record that the petitioner or the intervenor had challenged the existence of the privilege, that argument was waived. As a result, the court did not address whether the elements of the privilege were present, but accepted the presumption that they were. *Id.* at 328-29.

¶ 30    In this case, there is no dispute the subpoenaed material involve an attorney-client relationship in which an attorney and client communicated in a professional capacity. Petitioner did not challenge any element giving rise to the privilege until its response to respondent's motion to reconsider.

¶ 31    In its order granting the Rule, the trial court based its ruling on the finding that the elements of attorney-client privilege were not proven, an argument not raised by the parties. The

trial court cited *Consolidation Coal* and ruled that the elements of attorney client privilege are not proven. This case and this argument were not raised by either of the parties prior to the court's ruling. Our courts have held that courts should not raise issues which could be waived by the parties and reversed the trial court when it violated this principle. See *Lease Partners Corp. v. R&J Pharmacies, Inc.*, 329 Ill. App. 3d 69, 76 (2002) ("it would be inconsistent to permit trial courts to raise the issue *sua sponte*" because to do so "would put the trial court in the role of an advocate for a party, rather than taking the case as the parties have presented it). It is clear from *Decker* that a party may waive formal proof that the elements of a privilege exist by failing to argue their non-existence and arguing only whether an exception to the privilege applied as was done in this case.

¶ 32    Under *Decker*, the Petition for a Rule to Show Cause implicitly accepted the assertion of attorney-client privilege by failing to contest it and choosing to claim instead that the will contest exception to the privilege was applicable. See *Decker*, 153 Ill. 2d at 328. Under *Decker*, we accept the presumption that the essential elements of the attorney-client privilege are present in this case. *Id*. at 329. Additionally, we note that while petitioner raised *Consolidated Coal* in its response to the motion to reconsider, it was the first time petitioner raised the argument. Arguments raised for the first time in a motion to reconsider are waived on appeal. *Tafoya-Cruz v. Temperance Beer Co., LLC*, 2020 IL App (1st) 190606, ¶¶ 85-87. We believe this rule applies equally to both parties.

¶ 33    "A motion to reconsider is not the place to raise a new legal theory or factual argument." § 14:16. Motion to reconsider order, 1A Nichols Ill. Civ. Prac. § 14:16. Although usually applied to the moving party, the reasons for this rule apply to both the motion and the response to the motion. A motion to reconsider, or a response to a motion to reconsider, based on the submission

of new matters, such as new arguments or legal theories not presented during the pendency of the trial essentially seeks "a 'second bite at the apple,' *i.e.,* requiring the trial court to determine whether it should admit these new matters into evidence." See *Daniels v. Corrigan*, 382 Ill. App. 3d 66, 71 (2008). Thus, "[a] motion to reconsider is not the place for the inclusion of new arguments that could have been raised earlier. Actions like that simply waste everyone's time and money." *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 28 (discussing initial motion). See generally *People ex rel. Cacheaux v. Hanson*, 150 Ill. 122, 127-28 (1894) (discussing reply brief in supreme court, finding that "[t]he rules of practice will not justify the reversal of a judgment upon a ground not suggested in the trial court"); *Antol v. Chavez-Pereda*, 284 Ill. App. 3d 561, 566 (1996) ("It is also the rule that a party may not raise on appeal defenses not interposed in its answer before the trial court, and issues raised for the first time in a post-trial motion will not be considered."). See also *Commonwealth v. Reed*, 285 A.3d 970 (Pa. Super. Ct. 2022) (finding state waived argument raised for first time in second suppression hearing after trial court granted motion to reconsider denial of motion to suppress evidence).

¶ 34 Therefore we, like our supreme court in *Decker*, "will not address whether the elements of the privilege were present, but will accept the presumption that they were." *In re Marriage of Decker*, 153 Ill. 2d at 329.

¶ 35 We next briefly address the trial court's finding that the attorney-client privilege does not apply because "the allegedly confidential communications [were] disclosed to someone other than the attorney, client, or one of their agents." The parties do not assert that Nahlawe and Kabakibi were not respondent's clients or that Nahlawi was not acting as their agent when he communicated with respondent on their behalf. Respondent's motion to reconsider asserts petitioner "is in possession of powers of attorney for property and healthcare identifying

- 11 -

[Nahlawi] as the agent for Kabakibi and Nahlawe." The Petition for a Rule to Show Cause admits "Kabakibi has already produced a copy of several powers of attorney for property and healthcare *** which identify [Nahlawi] as the agent for *** Kabakibi" and also states that petitioner "presumes" "Nahlawi was identified as the power of attorney for his father at the same time, but that document was not produced." Regardless of any alleged lack of production, petitioner failed to dispute the issue of whether Nahlawi communicated with respondent as his parents' agent. Issues not argued in the brief on appeal are forfeited. *Aliano v. Ferriss*, 2013 IL App (1st) 120242, ¶ 30. Furthermore, the Petition for a Rule to Show Cause itself states that Kabakibi disclosed respondent as her and her late husband's estate planning attorneys. We find no merit to this finding by the trial court with regard to communications between respondent, respondent's agents[2], and Mamoun Nahlawe and Buthina Kabakibi. Any communication between Nahlawi and respondent regarding his parents' estate plan are privileged. See *Lama v. Preskill*, 353 Ill. App. 3d 300, 306 (2004) ("When an agent communicates with the principal's attorney, the agent speaks as the client, or principal, and his or her communications are protected to the same extent as though the principal was speaking."); 755 ILCS 45/2-1 (West 2020) (stating purpose for durable powers of attorney).

¶ 36    The failure of petitioner to contest the existence of the attorney-client privilege in the parties' pleadings and only contest whether the will contest exception applied resulted in depriving respondent of a meaningful opportunity to attempt to establish the necessary facts

---

[2]    "Information disclosed to a third party is not privileged, *unless* the third party is acting as an agent of the attorney or the client." (Emphasis added.) *Morrow*, 2017 IL App (3d) 160393, ¶ 27.

giving rise to the privilege. Pursuant to *Decker*, we turn to the question of whether an exception to the privilege applies.

¶ 37                    WHETHER THE WILL CONTEST EXCEPTION APPLIES

¶ 38    We next turn to the question of whether the will contest exception applies. There is an exception to the attorney-client privilege for a will contest. See *DeHart v. DeHart*, 2013 IL 114137, ¶ 70 (citing *Hitt v. Stephens*, 285 Ill. App. 3d 713, 717 (1997)). "Attorney-client privilege generally survives the client's death; however, the privilege is only a temporary one when presented in cases involving wills." *Morrow v. Pappas*, 2017 IL App (3d) 160393, ¶ 27 (citing *DeHart*, 2013 IL 114137, ¶ 69). In *Adler v. Greenfield*, 2013 IL App (1st) 121066, ¶ 61, this court held that the exception to the privilege for a will contest does not apply where the action was not a will contest but was "a separate action in the law division and not in the probate division, for legal malpractice."

¶ 39    The will contest exception to the attorney-client privilege does not apply in actions that do not directly contest a testamentary instrument where the separate action involves what could arguably be categorized as testamentary issues. See *Morrow*, 2017 IL App (3d) 160393, ¶ 29. In *Morrow*, the decedent changed his will and removed several former beneficiaries. *Id.* ¶ 3. The former beneficiaries sued the only party who was named a beneficiary under both the prior and subsequent wills, the decedent's employee, the decedent's business manager, and the attorney who drafted the will. *Id.* ¶¶ 3-4. The plaintiffs alleged several counts based on intentional interference with testamentary capacity and a count for legal malpractice against the attorney who drafted the will. *Id.* ¶ 8.

¶ 40    The *Morrow* court refused to expand the will context exception beyond the strict bounds of a will contest. See *Morrow*, 2017 IL App (3d) 160393, ¶ 28. The *Morrow* court found the

action "was not brought to contest the validity of the will, but instead was brought as a tort claim, asserting an intentional tortious interference with testamentary expectancy against the defendants." *Id*. ¶ 29. The court refused to "apply the narrow exception to the attorney-client privilege." *Id*. ¶ 30. The court's reasoning was that to do so would not be consistent with the rationale behind the exception. See *id*. ¶¶ 27, 30. "The rationale behind this limited exception to the privilege is that a decedent would (if one could ask him) forgo the privilege so that the distribution scheme he intended can be given effect." *Id*. ¶ 27. In *Morrow* there was "no contest to the distribution scheme executed" in the subsequent will. *Id*. ¶ 30. The court held that absent such a contest to a testamentary instrument, the narrow exception does not apply. *Id*. See also *Adler*, 2013 IL App (1st) 121066, ¶¶ 61-63.[3]

¶ 41     In this case, there is no dispute this is not a will contest and there is no contest to a testamentary document. Nonetheless, on appeal petitioner argues the exception to attorney-client privilege for will contests should apply because petitioner "stands in the shoes" of Nahlawi and, presumably, Nahlawi either could challenge the will or Door's action is a challenge to the will as Nahlawi's substitute; petitioner never says which, but we find these are the only ways the will contest exception to the privilege *might* apply. We do not require specification by petitioner

---

[3]     We acknowledge our supreme court's statement in *DeHart* that a party seeking to utilize the will contest exception "need only make an initial evidentiary showing that he is an heir or next of kin or that he was a recipient under a prior will. Any of these showings would make him an interested person and not a stranger subject to the limitations of the attorney-client privilege." *DeHart v. DeHart*, 2013 IL 114137, ¶ 73. We do not believe this statement in context abrogates any of this court's subsequent holdings requiring that the proceedings involve a contest to a testamentary document before the exception applies. In *DeHart*, there was "indisputably a will contest." *Id*. The question was whether the exception, which arose due to the will contest, could operate in favor or a party who allegedly was not an heir or next of kin. There is no claim in this case that petitioner, as the creditor of an heir to the testamentary plan, is not an interested party. Therefore, *DeHart* has no application in this case.

because in either case petitioner's argument fails. Accepting *arguendo* that petitioner stands in Nahlawi's shoes for all purposes and that Nahlawi could bring a will contest does not mean that he did; and Door's action against Nahlawi is not a contest to Nahlawe's testamentary intent, and such contests are the only reason the exception applies. See *Hitt*, 285 Ill. App. 3d at 717-18 ("This is not a will contest, however. Although the files plaintiffs demand do relate to estate planning, decedents' estates have been closed for 40 and 13 years, respectively. The theory underlying the will-contest exception does not apply."). At this stage of the proceedings, petitioner by its own admission[4] seeks to learn what the testamentary scheme was, not to challenge it. See *Morrow*, 2017 IL App (3d) 160393, ¶¶ 29-30 (refusing to apply will contest exception where "this action was not brought to contest the validity of the will, but instead was brought as a tort claim, asserting an intentional tortious interference with testamentary expectancy against the defendants").

¶ 42     "The burden is on the party seeking disclosure to show an exception to the privilege. Absent a showing of some appropriate exception, such as the will contest exception, it will remain intact." *Hitt*, 285 Ill. App. 3d at 718. As stated earlier, for purposes of this appeal we presume the privilege applies. Petitioner failed to show an exception to the privilege. Therefore, the privilege remains intact as to those documents in respondent's privilege log protected by the attorney-client privilege.

---

[4]     Petitioner lists several reasons for the issuance of the subpoena that is the basis of this appeal including that the trial court's reason for issuing the subpoena was "the finding by the circuit court that documents submitted to Kabakibi and Nahlawe's estate planning lawyers were relevant to whether or not the debtor, their son, was a beneficiary to any assets as a result of his father's death," and for petitioner "to learn any and all information concerning the capacity of both Kabakibi and Nahlawe."

¶ 43    Separately, petitioner argued below that documents "belonging to Kabakibi and Nahlawe that were provided to their attorneys are not protected," implying that the attorney-client privilege applies only to communications from attorney to client but not the other way around. Petitioner declined to raise that issue on appeal; therefore, it is forfeited. *In re Marriage of Delk*, 281 Ill. App. 3d 303, 307 (1996) ("the failure of an appellant to raise or argue an issue before the appellate court results in a waiver of the issue. 134 Ill. 2d R. 341(e)(7); *Meyers v. Kissner,* 149 Ill. 2d 1, 8 (1992)."). Forfeiture aside, the law is clear that "[t]he attorney-client privilege *** protects both the client's communications to the attorney and the attorney's advice to the client." *John Doe Corp. 1*, 2021 IL App (2d) 200513, ¶ 71 (citing *Radojcic*, 2013 IL 114197, ¶¶ 39-40).

¶ 44            WHETHER THE WORK PRODUCT PRIVILEGE APPLIES

¶ 45    Next, respondent argues the documents are also protected by the work-product privilege. We find that the work product privilege does not apply to the materials at issue. In Illinois, the work product privilege is provided by Illinois Supreme Court Rule 201(b)(2) (eff. May 29, 2014). *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 590-91 (2000). Rule 201 is an exemption of certain materials from the scope of discoverable material, which is otherwise broad. See Ill. S. Ct. R. 201(b)(1). Rule 201(b)(2) exempts "[a]ll matters that are privileged against disclosure on the trial," such as matters subject to the attorney-client privilege, and, separately, "[m]aterial prepared by or for a party in preparation for trial" if that material contains or discloses "the theories, mental impressions, or litigation plans of the party's attorney." "The work product doctrine *** is designed to protect the right of an attorney to thoroughly prepare his [or her] case and to preclude a less diligent adversary attorney from taking undue advantage of the former's efforts." *Fischel & Kahn, Ltd.*, 189 Ill. 2d at 591.

¶ 46    In *Monier v. Chamberlain*, 35 Ill. 2d 351, 359-60 (1966), our supreme court addressed "the scope of the exemption contemplated by this clause of the rule" (*i.e.*, the work product privilege). Our supreme court found that in determining that scope, "attention must be focused upon the words 'made in preparation for trial.' " *Monier*, 35 Ill. 2d at 359. There, our supreme court found as follows:

> "[M]emoranda made by counsel of his impression of a prospective witness, as distinguished from verbatim statements of such witness, trial briefs, documents revealing a particular marshalling of the evidentiary facts for presentment at the trial, and similar documents which reveal the attorney's 'mental processes' in shaping his theory of his client's cause, are documents 'made in preparation for trial' and exempt from discovery ***. Other material, not disclosing such conceptual data but containing relevant and material evidentiary details must, under our discovery rules, remain subject to the truth-seeking processes thereof." *Monier*, 35 Ill. 2d at 360.

"In other words, the materials sought to be produced must have been created for pending or impending litigation in order to be protected from disclosure by the work product doctrine." *Board of Education of Deerfield Public School District No. 109 v. Deerfield Education Ass'n, IEA-NEA*, 2022 IL App (4th) 210359, ¶ 63 (construing and *Monier*) (and cases cited therein). Even "*the mere prospect* of litigation, as opposed to pending or impending litigation, is not enough for the work product doctrine to apply." *Id.*

¶ 47    Respondent concedes that any work product contained in the materials at issue was not created in the context of any litigation, but respondent argues that reading Rule 201(b)(2) in conjunction with Illinois Rule of Professional Conduct of 2010 1.6(a) results in an interpretation

of Rule 201(b)(2) such that Rule 201(b)(2) protects the disclosure "of an attorney's work product outside the context of litigation." (Emphasis omitted.)

¶ 48 Rule of Professional Conduct 1.6 reads, in pertinent part, as follows: "A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is permitted by [this Rule.]" Ill. R. Prof. Conduct 1.6(a) (eff. Jan. 1, 2016). Respondent also relies upon comment 3 to the rule, which states:

> "The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics. The attorney-client privilege and work product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law." Ill. R. Prof. Conduct 1.6, cmt 3.

¶ 49 Respondent argues that where unprotected work product is later sought as evidence in litigation, "Rule 1.6 bridges that gap between opinion work product created before litigation and opinion work product sought in the context of litigation." We reject respondent's attempt to graft Rule of Professional Conduct 1.6 onto Supreme Court Rule 201 and specifically the work product privilege.

¶ 50 We construe respondent to argue that because the comments to Rule of Professional Conduct 1.6 provide that it effectuates both the attorney-client privilege and the work product privilege, and the Rule of Professional Conduct applies in situations other than those where

evidence is sought through compulsion of law, which we believe respondent to understand means outside of litigation, then Rule 1.6 is implicit in the work-product privilege and expands the scope of the work product privilege to any "information relating to the representation of a client." We reject respondent's argument. Respondent has offered no legal authority for its novel interpretation of the Rule, and, although respondent has offered its own construction of the rules at issue, that construction runs afoul of the plain language of both rules.

> "Illinois Supreme Court Rules are construed using the same principles that govern the interpretation of statutes. [Citation.] When construing a rule of the supreme court, a court's primary goal is to ascertain and give effect to the intent of the drafters. The most reliable indicator of that intent is the language used, given its plain and ordinary meaning. In determining the plain meaning of the rule's terms, a court must consider the rule in its entirety, keeping in mind the subject it addresses and the apparent intent of the drafters in enacting it. Courts will also interpret the rule so that no part of it is rendered meaningless or superfluous and will not depart from the plain language of the rule by reading into it exceptions, limitations, or conditions that conflict with the expressed intent."

*Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 22.

¶ 51 The plain language of the rules lead to the conclusion that the work product privilege does not apply in this case. The work product privilege in Rule 201 states clearly and unequivocally that it exempts from discovery "[m]aterial prepared by or for a party *in preparation for trial*." (Emphasis added.) Ill. S. Ct. R. 201(b)(2). Simultaneously, Rule of Professional Conduct 1.6(b)(6) states that "[a] lawyer *may* reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to comply with

\*\*\* a court order." (Emphasis added.) Ill. R. Prof. Conduct 1.6(b)(6). "The use of subpoenas is a judicial process, and courts have broad and flexible powers to prevent abuses of their process." *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 62.

¶ 52 Respondent failed to address Rule 1.6(b)(6) in the context of the subpoena issued in this case. Respondent's reliance on the comments to the rule is similarly misplaced because here, "evidence *is* sought from the lawyer through compulsion of law;" namely, the subpoena at issue. (Emphasis added.) Ill. R. Prof. Conduct 1.6, cmt 3. This is not a situation where, even accepting respondent's argument, the rule of client-lawyer confidentiality would apply, which is "in situations *other than those* where evidence is sought from the lawyer through compulsion of law." The comment expressly states a lawyer may disclose such information as required by "other law," including lawfully issued subpoenas.

¶ 53 As the party asserting the work product privilege, respondent bore the burden of proving facts that give rise to the privilege. See *Shields v. Burlington Northern & Santa Fe Ry. Co.*, 353 Ill. App. 3d 506, 508 (2004), overruled on other grounds, *Dameron v. Mercy Hospital and Medical Center*, 2020 IL 125219. The facts of this case do not give rise to application of the work product privilege. Respondent failed to establish that the material sought by the subpoena is "work product" as that term is defined by Rule 201(b)(2). See also Ill. R. Evid. 502(f)(2) (" 'work-product protection' means the protection that applicable law provides for tangible material (or its intangible equivalent) prepared in anticipation of litigation or for trial"). Respondent admits as much, but argues for a novel interpretation of the rules at issue so that the privilege would apply. Respondent's construction is contrary to the plain language of both rules and we will not read additional conditions into the rules that conflict with that plain language. The trial court's judgment that the work product privilege does not shield the documents at issue from

disclosure is affirmed. The documents identified in respondent's privilege log as protected only by the work product privilege are not privileged and must be disclosed; to wit: documents numbered 1, 2, 3, 5, 8, 12, 26, 29-32, 35, 49, 50, 56-59, 61-65 in respondent's Updated Privilege Log, without prejudice to respondent's right to assert that the attorney-client privilege applies.

¶ 54    We have found that given the facts of this case, the presumption of an attorney-client privilege as to the materials at issue applies. *In re Marriage of Decker*, 153 Ill. 2d at 328-29 ("when there is an attorney-client relationship in which an attorney and client have communicated in a professional capacity, as occurred in this case, there is a rebuttable presumption that their communication is privileged"). We have also found that no exception to the privilege has been established. *Hitt*, 285 Ill. App. 3d at 718 ("The burden is on the party seeking disclosure to show an exception to the privilege. Absent a showing of some appropriate exception, such as the will contest exception, it will remain intact."). Accordingly, the trial court's judgment granting the Petition for a Rule to Show Cause for respondent's failure to comply with the subpoena is reversed in part. The subpoenaed materials that fall within the attorney-client privilege are exempt from discovery. We have also found that the work product privilege does not apply in this case. Accordingly, the trial court's judgment is affirmed in part. The subpoenaed materials alleged to be privileged under the work product privilege are subject to discovery and must be produced unless another privilege applies.

¶ 55    In light of these holdings, the finding of contempt against respondent is also reversed. Despite our holding, however, we also note that respondent did fail to comply with the subpoena and suffer the contempt of court in a good faith effort to secure an interpretation of an issue to serve his or her client and the court; therefore, the civil contempt finding should not stand. *John Doe Corp. 1*, 2021 IL App (2d) 200513, ¶ 94. We exercise our discretion and specifically reverse

that portion of the trial court's judgment finding respondent in civil contempt and imposing a fine.

¶ 56                                    CONCLUSION

¶ 57     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

¶ 58     Affirmed in part, reversed in part.